## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Sheela K. O' Donnell, Individually and On Behalf of All Others Similarly Situated** | : | **Case No.  2:14-cv-1071** |
| | : | |
| **Plaintiff,** | : | **Judge:** |
| v. | : | |
| | : | **CLASS ACTION COMPLAINT** |
| | : | |
| **Financial American Life Insurance Company** | : | **and** |
| **c/o Robert B. Sullivan** | : | |
| **6201 College Blvd., Suite 500** | : | **JURY DEMAND** |
| **Overland Park, Kansas 66211** | : | |
| | : | |
| **Defendant.** | : | |

Plaintiff Sheela K. O' Donnell, by and through her attorneys, brings this action against Financial American Life Insurance Company ("Financial American" or "Defendant").  All allegations made in this Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge.  Each allegation in this Class Action Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### NATURE OF THE ACTION

1.      Plaintiff brings this action on her own behalf and on behalf of others similarly situated against Defendant for its failure to pay benefits pursuant to the terms of its credit life insurance policies.

2.      Credit life insurance purports to assure parties financing consumer transactions, including automobile purchases, that payments will be made if the purchaser becomes disabled

or dies. Unlike most types of insurance, the beneficiary of credit life insurance is most often not the consumer, but rather the consumer's lender.

3. According to the plain language of the policies, Defendant, whose credit life insurance policies are only sold at automobile dealerships, reserves for itself a specific time period to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given during the application process. After this specific time period, the policies provide that the coverage "will remain in force as submitted."

4. Plaintiff and her late-husband, Daniel O'Donnell, Sr. (the "Decedent") purchased credit life insurance and made a one-time premium payment to Defendant in early 2012. Defendant did not amend the coverage within the specific time period it reserved for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given during the application process. Accordingly, the coverage should have remained "in force as submitted," as expressly provided for in the Policy.

5. However, when the Decedent passed away in 2013 and Plaintiff submitted a claim for benefits under the policy, Defendant denied the claim based its determination that the Decedent was not "eligible" for the coverage he purchased based on the contents of the Decedent's confidential medical records. Defendant subsequently unilaterally amended the policy's joint coverage to provide single coverage for Plaintiff and issued a "refund" to the lender for what it Defendant claimed was the Decedent's share of the premium.

6. Upon information and belief, Defendant routinely, and without a fair evaluation, denies claims for benefits based on "eligibility" determinations made beyond the time period it reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.

7.     As a result of Defendant's wrongful conduct, Plaintiff and the members of the below defined classes are entitled to damages, as well as declaratory and injunctive relief.

## PARTIES

8.     Plaintiff is an adult individual who is and has been at all relevant times a resident of Licking County, Ohio, and a citizen of Ohio.

9.     Defendant Financial American is a Kansas corporation that maintains its principal place of business in Miami, Florida.  Defendant offers credit life insurance to customers located in no fewer than thirty states, and throughout the State of Ohio.  Upon information and belief, Defendant was formerly known as Cardif Life Insurance Company.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, and most members of the proposed classes are citizens of states different from the state of the Defendant.  Plaintiff also seeks an exercise of this Court's Supplemental Jurisdiction as to the Ohio State law claims under 28 U.S.C. § 1367.

11.     The Court has personal jurisdiction over Defendant because Defendant conducts significant, continuous, regular, and systematic business in this District.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant transacts significant business throughout this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

13.     On February 10, 2012, Plaintiff and the Decedent applied for credit life insurance with Defendant during their purchase of a new automobile from Tri-County Chrysler Dodge Jeep in Heath, Ohio ("Tri-County").  The application ("Application") and attached certificate of insurance ("Certificate") contain form designation codes FA-SPC1-AOH-0906 and FA-SPC1-COH-0906, respectively.  A true and accurate copy of the Application and Certificate is attached hereto as Exhibit A (collectively, the "Policy").

14.     Plaintiff and the Decedent were solicited to buy the credit life insurance by Tri-County.  They were not informed of any restrictions on their ability to do so, no questions were asked as to their health history, and no discussion of any kind occurred as to their suitability for this insurance.

15.     Under the heading "Statement of Insurability," the Application states in relevant part that an applicant is not eligible for any insurance "if I now have, or during the past two (2) years have been seen, diagnosed or treated (including medication) by a doctor or member of the medical profession for: (a) a disease or disorder of the: Brain; Heart; Lung; Liver; Kidney; Respiratory System; Circulatory System; Digestive System; Neurological/Muscular System; (b) Cancer; High Blood Pressure (prescribed and/or taking more than one medication); Edema; Stroke; Diabetes; Alcoholism; Drug Abuse; Morbid Obesity (and/or complications directly related to); or a Psychological or Psychiatric illness; (c) an HIV Positive test result; or (d) weight reduction surgery (had or recommended to have)."

16.     The Application continues, "Your Certificate is issued based on the information entered into this Application.  If, to the best of your knowledge and belief, there is any misstatement in this Application or if any information concerning the medical history of any

insured person has been omitted, you should advise the Company, otherwise your Certificate may not be a valid contract."

17.     Under the heading "MISSTATED TERMS," the Certificate states, "If we provided an incorrect amount of insurance to you because we were given wrong information, we will amend your coverage to provide the correct amount.  Any excess premium will be refunded to the person entitled to it.  **If we do not refund the excess premium within ninety (90) days of receipt of your initial premium, your coverage will remain in force as submitted.**" (emphasis added).

18.     The Certificate also includes a provision authorizing Defendant to conduct a physical examination or autopsy of the insured in certain situations: "We, at our own expense, have the right, and you must allow us the opportunity, to examine your person as often as it is reasonably required while a total disability claim is pending and to make an autopsy in the case of your death, if it is not forbidden by law."  Nowhere in the Policy is Defendant granted the right to demand confidential medical records prior to paying on a claim.

19.     Under the heading "When Insurance Stops – Refunds," the Certificate provides that the "insurance coverage stops" at the earliest of the following dates:  "(a) the date of your written cancellation request; (b) the Expiration Date as shown in the Schedule; (c) when your loan is paid in full; (d) when your loan is renewed; (e) when your loan is refinanced; (f) when repossession occurs; (g) when the Creditor files an affidavit of Repossession; or (h) when your loan otherwise stops."  The Certificate continues, "If insurance stops before the scheduled Expiration Date, a prompt refund or credit of any unearned premium will be made to the Creditor for credit to your account," and sets forth how such refunds will be calculated depending on the type of insurance purchased.

20.    Plaintiff and the Decedent signed the Application on February 10, 2012 and paid a one-time premium of $1,429.56 for the credit life insurance.  The "Initial Amount of Life Insurance" purchased was $30,629.93.

21.    The Application contains check boxes for four types of credit life insurance available (Gross Decreasing Insurance, Net Decreasing Insurance, Truncated Net Decreasing Insurance, and Level Insurance).  However, none of the boxes are checked on Plaintiff's completed Application.

22.    On October 16, 2013, the Decedent passed away.

23.    Plaintiff submitted a Claim for Life Benefit Payment on or around November 19, 2013 using a form provided by Defendant.  Included with the claim form was a certified copy of the death certificate, as required by the Policy.

24.    In a letter dated November 26, 2013, Defendant informed Plaintiff that it had no record of a Policy in her name or the name of the Decedent.  Defendant requested that Plaintiff submit a copy of the Policy, as well as the name and address of the dealership where she purchased her vehicle.  According to the letter, Defendant would determine whether Plaintiff was "eligible" for benefits upon receiving the requested information.

25.    Plaintiff complied with Defendant's request and provided the requested information.  In subsequent correspondence, Defendant demanded additional information from Plaintiff, including authorization forms to allow Defendant to obtain confidential medical records of the Decedent.  Under pressure to have her claim processed, Plaintiff again complied with the requests (even though nothing in the Application authorized Defendant to demand medical records).

6

26.     In a letter dated January 27, 2014, Defendant denied Plaintiff's claim based on the contents of the Decedent's confidential medical records. More specifically, because the medical records contained references to high blood pressure, vascular disease, and other disorders within the previous two years, the Defendant "determined that the decedent was not eligible to receive insurance from our Company."

27.     On or about February 4, 2014, Defendant sent Plaintiff's lender, Wells Fargo Dealer Services, a check for $613.19. According to the accompanying cover letter, the check represented a premium refund due as a result of a pre-existing medical condition of the Decedent. The letter explained that as a result, the Policy which had previously provided for joint coverage had been amended to provide single coverage for Plaintiff.

28.     According to the unambiguous terms of the Policy, Defendant had ninety days from when it accepted the premium payment from Plaintiff and the Decedent to remedy any amount of coverage wrongfully issued based on "wrong information" provided in the Application. After expiration of the ninety days, the Policy provided that "coverage will remain in force as submitted."

29.     Defendant did not amend the coverage amount and provide the required refund within ninety days of accepting Plaintiff's premium. Accordingly, pursuant to the terms of the Policy, Plaintiff's coverage should have remained "in effect as submitted." Nevertheless, Defendant wrongfully reduced the Decedent's coverage amount to zero.

30.     Tellingly, according to Defendant's correspondence, Defendant had no record of Plaintiff's Policy until after Plaintiff submitted a claim and provided a copy of the Policy to Defendant. This suggests that Defendant accepted Plaintiff's $1,429.56 premium payment even though it was made pursuant to a Policy for which Defendant had no record. Only when Plaintiff

7

submitted a claim – twenty-one months after Plaintiff submitted her Application and premium payment – did Defendant bother to investigate whether a Policy even existed.

31.     Defendant wrongfully, intentionally, and maliciously refuses to pay Plaintiff the benefits to which she is entitled under the Policy.  As such, Plaintiff is entitled to compensatory damages, consequential damages, punitive damages, injunctive relief, interest, attorney fees, costs, and expenses.

32.     Alternatively, even if Defendant were somehow authorized to determine more than 90 days after receiving the Decedent's premium payment that the Decedent was not "eligible" for the coverage he purchased (something that is directly contrary to the express provisions of the Policy), Defendant is not authorized to unilaterally convert the coverage from joint to single and issue a partial refund.

33.     After Defendant purported to determine that the Decedent was not "eligible" for coverage, it unilaterally amended the Policy's joint coverage to provide single coverage for Plaintiff and sent a $613.19 "refund" to the lender for the Decedent's share of the premium.  No provision of the Policy authorized Defendant to unilaterally amend Plaintiff's Policy from joint coverage to single coverage based solely on Defendant's untimely "determination" of the Decedent's eligibility.

34.     The only provision of the Policy that contemplates the conversion of joint coverage to single coverage relates specifically to cases of suicide, and is therefore inapplicable. ("We will not pay a benefit and will refund the entire insurance premium if death results from suicide …. We will return the life premium is [sic] single life insurance is in effect.  If joint life insurance is in effect, coverage will continue on the surviving insured.  However, we will refund the premium received in excess of the single life premium.")

35.     The only other provision of the Policy that relates to the issuance of "refunds" applies when the insurance coverage "stops," which is expressly defined by the Policy as the earliest of the following dates:  "(a) the date of your written cancellation request; (b) the Expiration Date as shown in the Schedule; (c) when your loan is paid in full; (d) when your loan is renewed; (e) when your loan is refinanced; (f) when repossession occurs; (g) when the Creditor files an affidavit of Repossession; of (h) when your loan otherwise stops."  Because none of the eight defined triggers have occurred with regard to the Policy at issue, this refund provision is equally inapplicable.

36.     Moreover, to the extent that the Defendant maintains that the Decedent was never "eligible" for coverage, then no insurance was ever actually purchased because no risk was ever actually transferred from the Decedent to Defendant.  Accordingly, the parties should have been returned to the positions they held before the transaction.  Thus, the Decedent (or his heirs) should have been received the "refunded" premium, not his lender.

37.      Additionally, Plaintiff and the Decedent each purchased one half of the Policy coverage, so to the extent that Defendant is authorized to unwind the transaction based on the Decedent's supposed ineligibility, the Decedent (or his heirs) were entitled to $714.78, $101.59 more than the $613.19 Defendant sent to the lender.

38.     Upon information and belief, Defendant writes policies with similar language in no fewer than 30 states, including Alabama, Arizona, Arkansas, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin.

39.     Upon information and belief, Defendant similarly and wrongfully denies policyholder claims for benefits in these 30 states beyond the time period it reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff incorporates by reference all of the preceding allegations.

41.     Upon information and belief, thousands of policyholders paid premiums pursuant to policies substantially identical to the Policy issued to Plaintiff.

42.     Upon information and belief, many hundreds of these policies remain in force.

43.     Upon information and belief, thousands of Class members throughout the approximately 30 states in which Defendant writes similar policies have been and continue to be wrongfully denied benefits under the Policy beyond the time period it reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.

44.     Plaintiff seeks to represent the following Classes and Subclass:

"**Injunctive Class**" -- All persons who are insured (or will become insured) under credit life insurance policies issued by Defendant that are substantially similar to Plaintiff's Policy.[1]

"**Damages Class**" -- All persons who, during the maximum period of time permitted by law, filed claims for payment of benefits pursuant to a credit life insurance policy issued by Defendant that is substantially similar to Plaintiff's Policy and who had a claim denied beyond the time period Defendant reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.[2]

---

[1] Plaintiff specifically reserves the right to amend this definition.
[2] Plaintiff specifically reserves the right to amend this definition.

"**Ohio Damages Subclass**" -- All persons in Ohio who, during the maximum period of time permitted by law, filed claims for payment of benefits pursuant to a credit life insurance policy issued by Defendant that is substantially similar to Plaintiff's Policy and who had a claim denied beyond the time period Defendant reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.[3]

45.     Excluded from the Class definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

46.     The Class Members are so numerous that joinder of all members is impracticable.

47.     There are numerous questions of law or fact common to each Class as a whole including, but not limited to, the following:

        a.  whether the relevant terms of the Class Members' policies are identical or substantially similar;

        b.  whether Defendant repeatedly denied claims beyond the time period Defendant reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process;

        c.  whether Defendant breached the terms of the policies;

        d.   whether Defendant arbitrarily and capriciously denied coverage as described above in bad faith;

---

[3] Plaintiff specifically reserves the right to amend this definition.

11

    e.   whether Defendant is authorized to convert joint coverage policies to single coverage policies based on its retroactive determination of a insured's ineligibility;

    f.   whether the insured or the insured's lender is entitled to a "refund" when the Defendant converts a joint coverage policy to a single coverage policy based on its retroactive determination of a insured's ineligibility; and

    g.   whether the insured is entitled to premium "refund" of 50% of the total premium paid when the Defendant converts a joint coverage policy to a single coverage policy.

48.    Plaintiff is a member of the Classes and Subclass described above.

49.    Plaintiff's claims are typical of the claims of the members of the Classes.

50.    Plaintiff will fairly and adequately protect the interest of the Classes and have engaged counsel experienced in litigating class actions and experienced in litigating insurance coverage class actions.

51.    The prosecution of separate actions by or against individual Class members will create a risk of inconsistent or varying adjudications with respect to the individual members of the Classes, which could establish incompatible standards of conduct for the Defendant.

52.    Defendant has acted and is refusing to act on grounds generally applicable to the Injunctive Class as a whole, thereby making final injunctive and declaratory relief with respect to the Injunctive Class as a whole appropriate.

53.    Questions of law and fact common to the members of the Damages Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54. To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying counsel to litigate their claims; (2) the extent and nature of any litigation previously commenced concerning this controversy has been rare and is likely to only involve a few policy holders; (3) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this vulnerable population receives the policy benefits for which they paid and to which they are entitled; and (4) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## CLAIMS

## COUNT I

## Declaratory Relief under the Declaratory Judgment Act (28 U.S.C. §2201, *et seq.*) – Injunctive Class

55. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

56. Plaintiff brings this claim for relief on behalf of herself and the members of the Injunctive Class. An actual controversy has arisen and now exists between Plaintiff and the members of the Injunctive Class, on the one hand, and Defendant, on the other hand, concerning their respective rights and duties in that Plaintiff and the members of the Injunctive Class contend that Defendant is not permitted to deny claims beyond the time period Defendant reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process, while Defendant contends that its actions and conduct are lawful and proper.

57. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff, the members of the Injunctive Class, and

Defendant may ascertain their respective rights and duties with respect to Defendant's obligations to pay claims.

## COUNT TWO

### Breach of Contract- Damages Class

58.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of the Damages Class defined above.

60.     Plaintiff entered into a contract with Defendant when she and the Decedent purchased the Policy from Defendant on February 10, 2012 and paid a one-time premium of $1,429.56 for the credit life insurance.  The Policy purchased had an "Initial Amount of Life Insurance" of $30,629.93.

61.     Plaintiff and the Decedent fully performed under the contract.

62.     On October 16, 2013, the Decedent passed away.

63.     Plaintiff submitted a Claim for Life Benefit Payment on or around November 19, 2013 on a form provided by Defendant and provided a certified copy of the death certificate, as required by the Policy.  All prerequisites for coverage were satisfied.

64.     According to the unambiguous terms of the Policy, Defendant had ninety days from when it accepted the premium payment to amend the coverage to remedy any amount of coverage wrongfully issued based on "wrong information" provided in the Application.  After expiration of the ninety days, the "coverage will remain in force as submitted."

65.     Defendant did not amend the coverage amount within ninety days of accepting the premium payment.  Accordingly, pursuant to the terms of the Policy, Plaintiff's coverage should have remained in effect and Plaintiff's claim should have been accepted.

66.     Defendant breached the terms of the Policy and wrongfully denied coverage to Plaintiff when it denied Plaintiff's claim more than ninety days after it accepted the premium payment.  Plaintiff has been damaged by the breach.

67.     Upon information and belief, Defendant has wrongfully denied and continues to wrongfully deny claims for payment of benefits under credit life insurance policies substantially similar to Plaintiff's Policy based on inaccurate information contained in applications even though the claims were submitted beyond the time period Defendant reserves for itself to rectify any "incorrect amount of insurance" it issued as the result of "wrong information" given to Defendant during the application process.

68.     As the result of Defendant's breach, Plaintiff and the Damages Class Members were harmed. As such, Plaintiff and the Damages Class Members are entitled to compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses.

## COUNT THREE

### **Breach of Contract- Damages Class**

69.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff brings this claim individually and on behalf of the Damages Class defined above.

71.     Plaintiff entered into a contract with Defendant when she and the Decedent purchased the Policy from Defendant on February 10, 2012 and paid a one-time premium of

$1,429.56 for the credit life insurance. The Policy purchased had an "Initial Amount of Life Insurance" of $30,629.93.

72.     Plaintiff and the Decedent fully performed under the contract.

73.     On October 16, 2013, the Decedent passed away.

74.     Plaintiff submitted a Claim for Life Benefit Payment on or around November 19, 2013 on a form provided by Defendant and provided a certified copy of the death certificate, as required by the Policy. All prerequisites for coverage were satisfied.

75.     Defendant wrongfully denied Plaintiff's claim for benefits, as stated above.

76.     Furthermore, Defendant wrongfully and unilaterally converted the Policy from providing joint coverage to single coverage, despite the fact that the Policy does not allow such a conversion. Defendant's action was a breach of contract, for which Plaintiff has suffered harm.

77.     Similarly, no provision of the Policy authorized Defendant to issue a "refund" to Plaintiff's lender upon determining that the Decedent was never eligible for coverage in the first instance. To the extent that the Defendant was authorized by the Policy to unwind the transaction, then the parties should have been returned to the positions they held before the transaction. Thus, the Decedent (or his heirs) should have been received the "refunded" premium, not his lender. Defendant's action was a breach of contract, for which Plaintiff has suffered harm.

78.     Additionally, Plaintiff and the Decedent each purchased one half of the Policy coverage. To the extent that Defendant is authorized by the Policy to unwind the transaction based on the Decedent's subsequent determination of Decedent's ineligibility, then Decedent (or his heirs) were entitled to $714.78, $101.59 more than the $613.19 Defendant "refunded" to the lender. Defendant's action was a breach of contract, for which Plaintiff has suffered harm.

79.     Upon information and belief, Defendant has similarly wrongfully and unilaterally converted Damages Class Members' policies from providing joint coverage to single coverage, and wrongfully issued "refunds" to Damages Class Members' lenders, rather than the Damages Class Members, for which Damages Class Members have suffered harm.

80.     As the result of Defendant's breach, Plaintiff and the Damages Class Members were harmed. As such, Plaintiff and the Damages Class Members are entitled to compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses.

## COUNT FOUR

### Bad Faith / Breach of Duty of Good Faith and Fair Dealing – Ohio Damages Subclass

81.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

82.     Plaintiff brings this claim individually and on behalf of the Ohio Damages Subclass.

83.     Ohio law imposes upon an insurer a duty of good faith and fair dealing in attending to the claims of its insured.

84.     Defendant systematically, and without a fair evaluation, denied coverage (and continues to deny coverage) under policies based on subsequent "eligibility" determinations made beyond ninety days from when it accepted consumers' premiums.  This violates in bad faith Defendant's duty to fairly evaluate and thoroughly review claims for benefits submitted by Plaintiff and members of the Ohio Damages Subclass.  As such, Plaintiff and members of the Ohio Damages Subclass are entitled to appropriate relief including punitive damages.

85.     Moreover, Defendant's refusal to honor claims for benefits unless the claimant provides Defendant access to confidential medical records, and Defendant's subsequent denial of

claims based on those medical records is unreasonable, unfounded, and frivolous, and hence constitutes bad faith, entitling Plaintiff and Ohio Damages Subclass Members to punitive damages.

86.     Additionally, the plain terms of the Policy do not authorize Defendant to unilaterally convert joint coverage policies to single coverage policies based on Defendant's subsequent and untimely determination of an insured's ineligibility.  Accordingly, because Defendant's actions have no reasonable justification, they are therefore made in bad faith.

87.     Similarly, the plain terms of the Policy do not authorize Defendant to unwind insurance purchases by issuing premium "refunds" to lenders based on Defendant's subsequent and untimely determination of an insured's ineligibility.  Moreover, Defendant has not demonstrated compliance with Ohio Revised Code § 3911.06.  Accordingly, because Defendant's actions have no reasonable justification, they are therefore made in bad faith.

88.     Lastly, the plain terms of the Policy do not authorize Defendant to unwind insurance purchases by refunding less than the insured's share of the premiums paid based on Defendant's subsequent and untimely determination as to an insured's ineligibility. Accordingly, because Defendant's actions have no reasonable justification, Defendant acted in bad faith.

89.     As the result of Defendant's actions, Plaintiff and the Ohio Damages Subclass Members were harmed.  As such, Plaintiff and the Ohio Damages Subclass are entitled to compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses.

## COUNT FIVE

### Breach of Fiduciary Duty – Individual Claim

90.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.     Plaintiff brings this claim individually.

92.     Pursuant to Ohio Revised Code § 3929.27, "A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."

93.     Tri-State solicited Plaintiff to obtain credit life insurance with Defendant, and therefore is the agent of Defendant.

94.     Plaintiff and the Decedent relied upon the expertise of Defendant's agent when making the decision to accept the offer of credit life insurance.  Neither Plaintiff nor the Decedent asked about or requested credit life insurance but was instead solicited by Defendant's agent to purchase the insurance.

95.     Defendant's agent was aware that Plaintiff and the Decedent were relying upon its expertise, and accordingly had a fiduciary duty to advise Plaintiff and the Decedent as to the suitability of the credit life insurance product being offered for sale.

96.     However, in breach of that fiduciary duty, Defendant's agent made no inquiry as to medical histories of Plaintiff or the Decedent, or their general suitability for the credit life insurance policy with Defendant.

97.     As a direct and proximate result of Defendant's agent's breach of fiduciary duty, Plaintiff has been harmed and is entitled to compensatory damages, consequential damages, punitive damages, injunctive relief, interest, attorney fees, costs, and expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the proposed Classes and Subclass, prays: (a) for an order certifying the proposed Classes and Subclass and appointing Plaintiff and her undersigned counsel of record to represent the proposed Classes and Subclass; (b) for a declaratory judgment declaring the acts and practices complained of herein to constitute a breach of contract; (c) for an award of actual damages for Plaintiff and members of the Damages Class in excess of $5,000,000; (d) for costs of suit herein; (e) for both pre- and post-judgment interest on any amounts awarded; (f) for payment of reasonable attorneys' fees; (g) for punitive damages; and (h) for such other and further relief as the Court may deem proper. Additionally, Plaintiff prays individually for a judgment declaring that the acts and practices complained of herein to constitute a breach of fiduciary duty, and for compensatory damages, consequential damages, punitive damages, injunctive relief, interest, attorney fees, costs, and expenses.

Respectfully submitted,

/s/Todd B. Naylor
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert B. Sherwood (0084363)
Goldenberg Schneider, LPA
1 West 4th Street, 18th Floor
Cincinnati OH  45202
Telephone:  (513) 345-8291
Facsimile:  (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

John M. Snider (0024281)
Stebelton, Aranda & Snider, LPA
109 North Broad Street, Suite 200
P. O. Box 130
Lancaster, OH 43130
Telephone: (740) 654-4141
Facsimile: (740) 654-2521
jms@sas-lawfirm.com

Attorneys for Plaintiff


**JURY DEMAND**

With the filing of this Complaint, Plaintiff hereby demands a trial by jury.


/s/Todd B. Naylor
Todd B. Naylor