UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


SHEELA K. O'DONNELL,

      Plaintiff,

                                    Case No. 2:14-cv-1071
      v.                            JUDGE GREGORY L. FROST
                                      Magistrate Judge Norah McCann King

FINANCIAL AMERICAN LIFE
INSURANCE CO.,

      Defendant.


OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for judgment on the pleadings (ECF No. 12), Plaintiff's memorandum in opposition (ECF No. 15), and Defendant's reply memorandum (ECF No. 19). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. Specifically, the Court **GRANTS** Defendant's motion with respect to Claim Five and **DENIES** Defendant's motion with respect to Claims One through Four.

I.      **BACKGROUND**

The facts set forth below are taken from Plaintiff's Complaint and are assumed true for purposes of this Opinion and Order.

A. *The Purchase*

Defendant Financial American Life Insurance Co. offers credit life insurance policies. Such policies, available to consumers financing credit transactions, offer payments to the

consumer's lender in the event the consumer dies or becomes disabled.  Defendant offers its policies exclusively at automobile dealerships, where Defendant trains the dealership's employees how to offer the policies to customers.  Tri-County Chrysler Dodge Jeep in Health, Ohio ("Tri-County") was one of these dealerships.

On February 10, 2102, Plaintiff Sheela K. O'Donnell and her late husband, Daniel O'Donnell, Sr., purchased a new automobile from Tri-County.  The O'Donnells financed the automobile purchase through Wells Fargo Dealer Service ("Wells Fargo").

In connection with the purchase, a Tri-County agent solicited the O'Donnells to purchase one of Defendant's policies.  The Tri-County agent presented the O'Donnells with an application, which Plaintiff attached to her complaint in this case (the "Policy").  The agent did not inform the O'Donnells of any restrictions on their ability to purchase the insurance or otherwise discuss the O'Donnells' suitability for the insurance.  The agent similarly did not ask any questions about the O'Donnells' heath history.

The O'Donnells each signed the Policy.  The O'Donnells paid a one-time premium of $1,429.56 in exchange for $30,629.93 worth of credit life insurance, payable to Wells Fargo in the event the O'Donnells died or became disabled.

### B. *The Policy and its Terms*

The parties highlight several of the Policy's provisions.  The following provisions relate to the O'Donnells' eligibility for the Policy:

> THE FOLLOWING ARE MY REPRESENTATIONS AND
> ACKNOWLEDGMENT OF INSURABILITY REQUIREMENTS
> ELIGIBILITY REQUIREMENT:
>
> . . .

1. I am not eligible for any insurance if I now have, or during the past two (2) years have been seen, diagnosed or treated (including medication) by a doctor or member of the medical profession for: (a) a disease or disorder of the: Brain, Heart, Lung, Liver, Kidney, Respiratory System, Circulatory System, Digestive System, Neurological/Muscular System; (b) Cancer; High Blood Pressure (prescribed and/or taking more than one medication); Edema; Stroke; Diabetes; Alcoholism; Drurg Abuse; Morbid Obesity (and/or complications directly related to); or a Psychological or Psychiatric Illness; (c) an HIV Positive test result; or (d) weight reduction surgery (had or recommended to have).

. . .

### YOUR CERTIFICATE MAY NOT BE IN FORCE WHEN YOU HAVE A CLAIM! PLEASE READ!

Your certificate is issued based on the information entered in this Application.  If, to the best of your knowledge and belief, there is any misstatement in this Application or if any information concerning the medical history of any insured person has been omitted, you should advise the Company, otherwise your Certificate may not be a valid contract.

My signature below acknowledges that I have read and understand the above Insurability Requirements and represent that I meet both the Eligibility Requirements and the Statement of Insurability and am eligible for the coverage as requested in the Schedule.  I further understand and agree that I am insured only if I have signed below and I agree to pay the premiums for this insurance. . . .

(ECF No. 1-1, at PAGEID # 22.)

Below that clause, the O'Donnells both signed the Policy:



(*Id.*)

Following those sections, the Policy contains a "GENERAL PROVISIONS" section.

That section contains the following incontestability provision:

INCONTESTABILITY: We will not contest this insurance: (a) except for non-payment of a premium, after it has been in force two (2) years during the Insured

3

Borrower's lifetime . . . or (b) during the first two (2) years it is in force unless the contest is based on a written statement signed by the Insured Borrower and furnished to the Insured Borrower or the beneficiary.  All statements made by you and your insured Co-Borrower, in the absence of fraud, are deemed representations and not warranties.

(*Id*. at PAGEID # 24.)

The Policy later contains the following "MISSTATED TERMS" clause:

MISSTATED TERMS:  If we provided an incorrect amount of insurance to you because we were given wrong information, we will amend your coverage to provide the correct amount. Any excess premium will be refunded to the person entitled to it.  If we do not refund the excess premium within ninety (90) days of receipt of your initial premium, your coverage will remain in force as submitted.

(*Id*.)

### C.  Mr. O'Donnell's Death

Approximately a year and a half after the O'Donnells purchased the Policy, on October 16, 2013, Mr. O'Donnell passed away.  Plaintiff submitted a claim to Defendant for a life benefit payment pursuant to the Policy.  Plaintiff included a certified copy of Mr. O'Donnell's death certificate with her claim.

Defendant requested additional information from Plaintiff.  Specifically, Defendant presented Plaintiff with authorization forms to obtain Mr. O'Donnell's medical records.  Plaintiff complied and Defendant received the forms, which indicated that Mr. O'Donnell had suffered from high blood pressure, vascular disease, and other disorders within the two years preceding the date on which the O'Donnells signed the Policy.

Defendant denied Plaintiff's claim and informed her that Mr. O'Donnell was not eligible for its insurance.  Defendant then sent Wells Fargo a check for $613.19, representing a refund for

Mr. O'Donnell's portion of the premium.  Finally, Defendant amended the Policy from joint coverage to single coverage.

### D.  Plaintiff's Claims

Plaintiff alleges that Defendant breached the Policy by denying her claim.  Plaintiff contends that "Misstated Terms" Clause modifies the "Incontestability" Clause and allowed Defendant to amend the Policy based on "wrong information" only "within ninety (90) days of receipt of [the O'Donnells'] initial premium."  Accordingly, Plaintiff argues, because ninety days had elapsed after Defendant received the O'Donnells' initial premium, the "Misstated Terms" Clause precluded Defendant from contesting Mr. O'Donnell's eligibility under the Policy and denying Plaintiff's claim.

Plaintiff alleges that Defendant also breached the Policy in three other ways.  First, Plaintiff argues that the Policy did not authorize Defendant to (1) unilaterally convert the Policy from joint coverage to single coverage, (2) issue a refund to Wells Fargo upon determining that Mr. O'Donnell was never eligible for coverage, or (3) issue a refund in the amount of $613.19. Regarding the first two points, Plaintiff argues that, if Mr. O'Donnell was never eligible for coverage, "then the parties should have been returned to the positions they held before the transaction. . . . [Mr. O'Donnell] (or his heirs) should have been [sic] received the 'refunded' premium, not his lender."  (*Id*. at PAGEID # 16.)  Regarding the third point, Plaintiff argues that, even if Defendant acted properly in refunding Mr. O'Donnell's portion of the premium, it should have refunded half of the initial premium payment ($714.78) rather than the amount of $613.19. Plaintiff seeks to pursue these claims on behalf of a nationwide class of individuals similarly aggrieved by Defendant's conduct.

5

In addition to these breach of contract claims, Plaintiff also asserts a claim, on behalf of a class, for declaratory relief pursuant to 28 U.S.C. § 2201.  Plaintiff alleges that "[a] judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff, the members of the Injunctive Class, and Defendant may ascertain their respective rights and duties with respect to Defendant's obligations to pay claims."  (ECF No. 1 ¶ 57.)

Plaintiff also asserts a claim for breach of the duty of bad faith and fair dealing on behalf of an Ohio damages subclass.  In this claim, Plaintiff asserts: "Defendant systematically, and without a fair evaluation, denied coverage (and continues to deny coverage) under policies based on subsequent 'eligibility' determinations made beyond ninety days from which it accepted consumers' premiums.  This violates in bad faith Defendant's duty to fairly evaluate and thoroughly review claims for benefits submitted by Plaintiff and members of the Ohio Damages Subclass."  (*Id.* ¶ 84.)  Plaintiff seeks punitive damages in connection with this claim.

Finally, Plaintiff asserts an individual claim for breach of fiduciary duty.  Plaintiff's theory of this claim is that Defendant's agent, the Tri-County employee who solicited the O'Donnells to purchase the insurance, "had a fiduciary duty to advise Plaintiff and the Decedent as to the suitability of the credit life insurance product being offered for sale."  (*Id.* ¶ 95.)  Plaintiff alleges that the Tri-County agent breached this duty.

### E.  Defendant's Counterclaim

Defendant filed a counterclaim to Plaintiff's complaint seeking rescission of the Policy.  Defendant alleged, and Plaintiff admitted, that at the time she signed the Policy, she "was aware that Mr. O'Donnell had been diagnosed with and/or received treatment for neuropathy, high blood pressure, peripheral vascular disease, carotid artery disease, Parkinson's disease, and

6

atherosclerotic artery disease during the period of February 10, 2010 through February 10, 2012." (ECF No. 7 ¶ 17.)  Defendant further asserts that Plaintiff's signature on the Policy represents a material, willful, and fraudulent misrepresentation, and that Defendant would not have issued the Policy but for that misrepresentation.  Defendant also seeks a declaratory judgment that the Policy is void *ab initio* as a result of Mr. O'Donnell's pre-existing medical condition.

## II.    ANALYSIS

Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Defendant does not specify whether it seeks judgment on its counterclaim, Plaintiff's complaint, or both.

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court reviews motions made under Rule 12(c) in the same manner it would review a motion made under Rule 12(b)(6).  *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive a motion for judgment on the pleadings, a complaint must provide fair notice of each claim and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A court, in ruling on a Rule 12(b)(6) or Rule 12(c) motion, must construe the pleadings in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true.  *See id*. at 555–56.  It goes without saying that the focus of a Rule 12(c) motion is on the pleadings of the opposing party.  *See Howard Indust., Inc. v. Ace Am. Ins. Co*., No. 2:13-cv-0677, 2014 WL 978445, at *2

(S.D. Ohio Mar. 12, 2014) (*citing JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)).

Defendant's motion relies on its affirmative defense that the Policy is void *ab initio* due to the O'Donnells' purported misrepresentation regarding Mr. O'Donnell's health.  A plaintiff generally is not required to plead facts negating an affirmative defense. *See, e.g., Jones*, 549 U.S. at 212–16.  A court may, however, grant a Rule 12(c) motion on the basis of an affirmative defense if the defense appears on the face of the complaint.  *See id*. at 215 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *see also Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 520 (6th Cir. 2008); *Doe v. Dublin City Sch. Dist*., No. 2:09-cv-738, 2010 WL 1434318, at *4 (S.D. Ohio Apr. 8, 2010), *aff'd*, 453 F. App'x 606 (6th Cir. 2011).

Defendant cites to the following sources throughout its motion: Plaintiff's complaint, Defendant's counterclaim, and Plaintiff's answer to the counterclaim.  As stated above, however, allegations in Defendant's counterclaim cannot support its request for judgment on the pleadings. *See Howard Indust., Inc.*, 2014 WL 978445, at *2.  Plaintiff does not dispute that the Court can consider her complaint and her answer to the counterclaim; accordingly, the Court will focus on those pleadings in analyzing Defendant's motion.

### A.  Breach of Contract (Claims Two and Three)

The Court first considers Defendant's request for judgment on Plaintiff's breach of contract claims.  Defendant's argument relies on the fact that both Plaintiff and Mr. O'Donnell signed the Policy despite knowing that Mr. O'Donnell was ineligible for coverage.  Defendant argues that, because Plaintiff and Mr. O'Donnell signed the Policy knowing Mr. O'Donnell was ineligible, Defendant cannot be liable for breaching its obligations under the Policy.

8

In support of its argument, Defendant cites Ohio Revised Code § 3911.06, which states:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

The Ohio Supreme Court has added:

> [A]n insurer can satisfy the requirements of Section 3911.06, so as to establish an
>
> answer to an interrogatory by an applicant as a bar to recovery upon a policy, by
>
> *clearly proving* that
>
>> (1) the applicant willfully gave a false answer
>> (2) such answer was made fraudulently
>> (3) but for such answer the policy would not have been issued and
>> (4) neither the insurer nor its agent had any knowledge of the falsity of
>>     such answer.

*Jenkins v. Metro. Life Ins. Co*., 171 Ohio St. 557, 561–62, 173 N.E.2d 122 (1961) (emphasis

added).  Courts have interpreted the phrase "clearly proving" to require clear and convincing

evidence.  *See, e.g., Spencer v. Mn. Life Ins. Co*., 492 F. Supp. 2d 1035, 1037 (S.D. Ohio 2007).

The parties do not address whether § 3911.06, which applies to an insured's "answer to

any interrogatory," applies to the facts of this case, in which Plaintiff and Mr. O'Donnell signed

a Policy that contained certain representations.  Because Plaintiff does not dispute Defendant's

contention that § 3911.06 is relevant to this case, the Court will assume without deciding that §

3911.06 applies.

The question then becomes whether the pleadings alone satisfy Defendant's burden of proving, by clear and convincing evidence, each of the four elements set forth above.  The Court easily concludes that they do not.

Setting aside the issue of whether Plaintiff and Mr. O'Donnell acted fraudulently when they signed the Policy, § 3911.06 requires Defendant to prove that, but for the O'Donnell's misrepresentation, Defendant would not have issued the Policy.  Defendant argues that the Policy itself—which states that persons with certain medical conditions are ineligible for coverage and advises applicants that "any misstatement might invalidate their coverage"—satisfies this element.  (ECF No. 12-1, at PAGEID # 101.)

These provisions are insufficient to satisfy Defendant's evidentiary burden.  The Court agrees with Plaintiff that these provisions are not clear and convincing evidence that Defendant would not have issued the Policy to the O'Donnells in this case.  Defendant does not provide any persuasive argument or authority to the contrary.

Defendant next argues that the following common-law principle constitutes an alternative ground on which the Court should find the Policy invalid: "[A] failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option."  (ECF No. 19, at PAGEID # 143 (quoting *Wuliger v. Mfrs. Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009)).  Defendant suggests that, because the Policy is "voidable" under this legal principle, Defendant cannot be liable for breach of the Policy.  Defendant does not, however, discuss the meaning of the term "voidable" or the elements an insurer must prove to rescind a voidable contract.  Defendant instead suggests that this common-law rule provides a defense to insurers who can prove that the insured failed to disclose "conditions affecting the risk" but

10

cannot prove the other elements (fraud, but-for causation, and knowledge) required to invoke § 3911.06.

The Court rejects this argument. Defendant provides no support for the proposition that the common-law rule cited above provides a defense when an insurer cannot satisfy § 3911.06. Case law, in fact, suggests the opposite. *See, e.g., Spriggs v. Martin*, 115 Ohio App. 529, 534, 182 N.E.2d 20 (3d Dist. 1961) (noting that, if § 3911.06 did not apply to a contract, the party seeking to rescind that contract based on fraud in the inducement would still have a similar burden of proof); *accord Hackney v. Stonebridge Life Ins. Co*., No. 2:14-cv-1216, 2014 WL 7341130, at *4 (S.D. Ohio Dec. 23, 2014). *See also Buemi v. Mut. Of Omaha Ins. Co*., 37 Ohio App. 3d 113, 116, 524 N.E 2d 183 (8th Dist. 1987) (citing the common-law principle discussed above but proceeding to analyze whether the insurer satisfied the elements of Ohio Revised Code § 3923.14, which is analogous to § 3911.06). Defendant again provides no persuasive argument or authority in support of its position.

Having rejected both of Defendant's arguments with respect to Claims Two and Three, the Court **DENIES** Defendant's motion for judgment on these claims. And because Defendant's argument for judgment on Claim One (Declaratory Judgment) is premised entirely on its argument that it is entitled to judgment on the breach of contract claims, the Court similarly **DENIES** Defendant's motion for judgment on Claim One.

### B. Breach of Duty of Good Faith and Fair Dealing (Claim Four)

Defendant next argues that it is entitled to judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing. Both parties agree that Ohio courts recognize such a claim in the insurance context. *See, e.g., Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 302, 525 N.E.2d 783 (1988). The parties similarly agree that, "[i]n determining whether an insurer acted with

11

the requisite good faith, a reviewing court must examine whether the insurer had a 'reasonable justification' for taking the challenged action." *LoCoco v. Medical Sav. Ins. Co.*, 530 F.3d 442, 450-51 (6th Cir. 2008) (quoting *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 644 N.E. 2d 397, 399–400 (1994)). Facts relevant to this inquiry include whether the insurer conducted an adequate investigation of the insured's claim, whether the insurer acted arbitrarily and capriciously in denying a claim, and/or whether the insurer acted improperly in processing and handling the claim. *See Zoppo*, 71 Ohio St. 3d at 400; *Pate v. Guarantee Trust Life Ins. Co.*, No. 1:09-CV-2454, 2010 WL 987090, at *2 (N.D. Ohio Mar. 15, 2010) (citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 275, 452 N.E.2d 1315 (1983)).

Defendant argues that it satisfies its burden in this case because the O'Donnells concede on the face of the pleadings that they misrepresented material facts when they signed the Policy, such that Defendant had reasonable justification to deny the claim as a matter of law. Defendant cites *Long v. Time Ins. Co.*, 572 F.Supp.2d 907, 916-17 (S.D. Ohio 2008), which was resolved at the summary judgment stage, in support of its position. Defendant does not cite any authority in which a court found this defense established at the pleadings stage of the litigation.

The Court again agrees with Plaintiff that judgment in Defendant's favor is inappropriate at this time. Defendant's argument relates to the merits of Plaintiff's claim, of which the O'Donnells' knowledge of Mr. O'Donnell's health condition is only one relevant factor. "Given that issues relating reasonableness are inherently fact-sensitive," *Keyser v. UNUM Life Ins. Co. of Am.*, No. C2-03-138, 2005 WL 2230203, at *9 (S.D. Ohio Sept. 12, 2005), and given the lack of facts before the Court at this time, the Court finds this inquiry better suited for the summary judgment stage. *Cf. Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 422 (6th Cir. 2000) (stating that a bad faith claim should survive a motion to dismiss even where the insurer denied a claim for fire damage and

12

the insured was indicted for arson, and noting that a *per se* rule would be inappropriate because the court must consider all facts surrounding the event). The Court accordingly **DENIES** Defendant's motion for judgment on Claim Four.

### C. Breach of Fiduciary Duty (Claim Five)

In her fifth claim for relief, Plaintiff alleges that both she and Mr. O'Donnell "relied upon the expertise of Defendant's agent when making the decision to accept the offer of credit life insurance," and that "Defendant's agent was aware that [the O'Donnells] were relying upon [that] expertise." (ECF No. 1 ¶¶ 94–95). The question is whether these allegations, if proved, would establish a fiduciary relationship under Ohio law.

The Court agrees with Defendant that these allegations are insufficient to allege a fiduciary relationship. In general, "the relationship between an insurance agent and an insured, without more, is not a fiduciary relationship, but an ordinary business relationship." *Long*, 572 F.Supp.2d at 914. *See also Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x 575, 580 (6th Cir. 2014). Plaintiff therefore cannot establish that a fiduciary relationship existed unless she can establish a relationship of special trust over and above the typical insurer-insured relationship. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999).

The Sixth Circuit's opinion in *Greenberg* illustrates why Plaintiff's fiduciary duty allegations fail. The plaintiffs in *Greenberg* alleged that, in purchasing life insurance policies, they relied on the insurer and its agents to fully disclose all facts relevant to those policies. 177 F.3d at 521. Like Plaintiff, the *Greenberg* plaintiffs alleged that the insurer and its agents failed to disclose all pertinent facts about the policies and therefore breached a fiduciary duty. *Id.*

13

The Sixth Circuit affirmed the district court's dismissal of this claim at the pleadings stage. Noting that a fiduciary relationship requires a special relationship of trust between the parties, the Sixth Circuit stated:

> [The plaintiffs'] allegations fail to demonstrate the existence of a special relationship of trust . . . Rather, the relationship possesses the qualities of a typical arm's-length transaction, in which the seller often possesses more expertise on the item to be sold and the buyer typically relies on the seller's representations.  But this is insufficient in and of itself to establish a special relationship of trust. . . . To hold otherwise would impose fiduciary obligations on the seller of goods or services in the vast multitude of ordinary arm's-length transactions simply on the basis that the seller possessed superior knowledge of the product being sold.

*Id*. at 521–22 (internal citations omitted).

Here, Plaintiff's allegations that she relied on Defendant's agent's expertise when making her decision to purchase the Policy, and that Defendant knew of this reliance, establishes only "the qualities of a typical arm's-length transaction" in which the seller's knowledge of the product is superior to the buyer's.  *Id*.  Plaintiff's allegations therefore cannot state a claim for the same reasons that the *Greenberg* plaintiffs allegations failed to state a claim.

Plaintiff's arguments to the contrary are not persuasive.  Plaintiff argues that this question is better suited for summary judgment; however, unlike with Claims One through Four, Defendant's challenge to Claim Five tests the sufficiency of Plaintiff's allegations rather than the merits of Plaintiff's claim.  Because Plaintiff failed to satisfy her obligation to plead facts that could establish a fiduciary relationship, dismissal of this claim is proper.  *See id*. (affirming the district court's dismissal of the fiduciary duty claim at the pleadings stage).  And finally, the fact that "numerous courts have found that a fiduciary relationship can exist between an insurer and an insured," (ECF No. 15, at PAGEID # 131), even if true, does not save Plaintiff's deficient allegations in this case.

For those reasons, the Court **GRANTS** Defendant's motion for judgment on Claim Five.

14

### D. Class Action Allegations

For its final argument, Defendant asserts that Plaintiff's class action allegations must be dismissed because Plaintiff cannot state a claim for relief.  This argument is inapplicable given the Court's above-stated conclusions with respect to Claims One, Two, Three and Four.  As such, the Court **DENIES** Defendant's motion for judgment on Plaintiff's class action allegations.

### III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for judgment on the pleadings (ECF No. 12).  Specifically, the Court **GRANTS** Defendant's motion with respect to Claim Five and **DENIES** Defendant's motion with respect to Claims One through Four.

**IT IS SO ORDERED**.

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

15