**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHEELA K. O'DONNELL,**

      **Plaintiff,**

           **v.**

**FINANCIAL AMERICAN LIFE**
**INSURANCE CO.,**

      **Defendant.**

                            **Case No. 2:14-cv-1071**
                            **JUDGE GREGORY L. FROST**
                            **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (ECF No. 36), Plaintiff's response in opposition (ECF No. 51), and Defendant's reply memorandum (ECF No. 55).  For the reasons that follow, the Court **DENIES** the motion.

**I.**        **BACKGROUND**

      *A. The Parties*

Defendant Financial American Life Insurance Co. offers credit life insurance policies. Such policies, available to consumers financing credit transactions, offer payments to the consumer's lender in the event the consumer dies or becomes disabled.  Defendant offers its policies exclusively at automobile dealerships, where Defendant trains the dealership's employees how to offer the policies to customers.  Tri-County Chrysler Dodge Jeep in Health, Ohio ("Tri-County") was one of these dealerships.

On February 10, 2102, Plaintiff Sheela K. O'Donnell and her late husband, Daniel O'Donnell, Sr., purchased a new automobile from Tri-County.  The O'Donnells financed the automobile purchase through Wells Fargo Dealer Service ("Wells Fargo").

In connection with the purchase, a Tri-County agent solicited the O'Donnells to purchase one of Defendant's policies.  The agent told the O'Donnells that it would benefit them to purchase credit life insurance since they were both in their sixties.  The agent then presented the O'Donnells with an application for credit life insurance (the "Policy").  The agent did not inform the O'Donnells of any restrictions on their ability to purchase the insurance or otherwise discuss the O'Donnells' suitability for the insurance.  The agent similarly did not ask any questions about the O'Donnells' heath history.

### B.  The Policy and its Terms

The parties highlight several of the Policy's provisions.  The following provisions relate to the O'Donnells' eligibility for the Policy:

> THE FOLLOWING ARE MY REPRESENTATIONS AND
> ACKNOWLEDGMENT OF INSURABILITY REQUIREMENTS
> ELIGIBILITY REQUIREMENT:
>
> . . .
>
> 1.  I am not eligible for any insurance if I now have, or during the past two (2) years have been seen, diagnosed or treated (including medication) by a doctor or member of the medical profession for: (a) a disease or disorder of the: Brain, Heart, Lung, Liver, Kidney, Respiratory System, Circulatory System, Digestive System, Neurological/Muscular System; (b) Cancer; High Blood Pressure (prescribed and/or taking more than one medication); Edema; Stroke; Diabetes; Alcoholism; Drug Abuse; Morbid Obesity (and/or complications directly related to); or a Psychological or Psychiatric Illness; (c) an HIV Positive test result; or (d) weight reduction surgery (had or recommended to have).
>
> . . .

2

YOUR CERTIFICATE MAY NOT BE IN FORCE WHEN YOU HAVE A
CLAIM! PLEASE READ!

Your certificate is issued based on the information entered in this Application.  If,
to the best of your knowledge and belief, there is any misstatement in this
Application or if any information concerning the medical history of any insured
person has been omitted, you should advise the Company, otherwise your
Certificate may not be a valid contract.

My signature below acknowledges that I have read and understand the above
Insurability Requirements and represent that I meet both the Eligibility
Requirements and the Statement of Insurability and am eligible for the coverage
as requested in the Schedule.  I further understand and agree that I am insured
only if I have signed below and I agree to pay the premiums for this insurance. . . .

(ECF No. 37-1, at PAGEID # 386.)

Below that clause, the O'Donnells both signed the Policy:

WARNING: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer,
submits an Application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

Primary Borrower _____ /10/12     Co-Borrower's _____

                                          Date                                               Date

(*Id.*)

        Plaintiff testified that neither she nor Mr. O'Donnell read the Policy before signing it.

The Tri-County agent did not instruct the O'Donnells not to read the Application or obstruct the

O'Donnells from doing so.  Plaintiff testified that she and Mr. O'Donnell had signed other

applications for credit life insurance in the past without reading them.

        Following the Policy's Eligibility section is a section entitled CERTIFICATE OF

INSURANCE.  This section states:

We certify that, if we have been paid the premium shown in the Application, you
are insured for the coverage shown in the Application, subject to the terms of the
Group Policy issued to the Creditor and acceptance by us.  Our acceptance will be
in accordance with our procedures and practices.  Under no circumstances will
acceptance occur before sixty (60) days of the receipt of the Application. . . .  All
benefit payments are made to the Creditor shown in the Application to pay off or

3

reduce your debt.  If benefit payments are more than the balance of your loan, we will pay the difference to you or to a named Second Beneficiary. . . .

The PAYMENT OF A DEATH BENEFIT section below the CERTIFICATE OF INSURANCE SECTION states:

> If you or the insured Co-Borrower dies while insured, we will pay the amount of insurance then in force after we receive proof of death.  Only one death benefit is payable under this Certificate.  Payment of a death benefit terminates all insurance coverage under this Certificate.  We will not pay more than the decreasing insurance balance of the initial amount of life insurance.

(*Id*. at PAGEID # 387.)

It is undisputed that the O'Donnells paid a premium of $1,429.56 at the time they signed the Policy.  This premium, according to Plaintiff, purchased $30,629.93 worth of credit life insurance over a period of 75 months, payable to Wells Fargo in the event the O'Donnells died or became disabled.  Defendant accepted the premium payment, meaning that the O'Donnells became "insured for the coverage shown in the Application, subject to the terms of the Group Policy issued to the Creditor."  (*Id*.)  Defendant therefore became obligated to "pay the amount of insurance then in force after we receive proof of death" in the event that either of the O'Donnells died while insured.  (*Id*.)

The Policy also contains a GENERAL PROVISIONS section.  That section contains the following incontestability provision:

> INCONTESTABILITY: We will not contest this insurance: (a) except for non-payment of a premium, after it has been in force two (2) years during the Insured Borrower's lifetime . . . or (b) during the first two (2) years it is in force unless the contest is based on a written statement signed by the Insured Borrower and furnished to the Insured Borrower or the beneficiary.  All statements made by you and your insured Co-Borrower, in the absence of fraud, are deemed representations and not warranties.

(*Id*. at PAGEID # 388.)

4

The Policy later contains the following MISSTATED TERMS clause:

> MISSTATED TERMS:  If we provided an incorrect amount of insurance to you because we were given wrong information, we will amend your coverage to provide the correct amount. Any excess premium will be refunded to the person entitled to it.  If we do not refund the excess premium within ninety (90) days of receipt of your initial premium, your coverage will remain in force as submitted.

(*Id.*)  It is undisputed that Defendant did not contest the Policy at any time before Mr. O'Donnell's death.

### C.  Mr. O'Donnell's Death

Approximately a year and a half after the O'Donnells purchased the Policy, on October 16, 2013, Mr. O'Donnell died.  Plaintiff submitted a claim to Defendant for a life benefit payment pursuant to the Policy.  The balance owed on the loan at that time was approximately $21,000.

Plaintiff included a certified copy of Mr. O'Donnell's death certificate with her claim. The death certificate lists Mr. O'Donnell's cause of death as myocardial infarction due to coronary artery disease and hypercholesterolemia.  The death certificate also lists conditions contributing to Mr. O'Donnell's death as hypertension, atrial fibrillation, congestive heart failure, peripheral vascular disease, and esophageal cancer.

Defendant requested additional information from Plaintiff.  Specifically, Defendant presented Plaintiff with authorization forms to obtain Mr. O'Donnell's medical records.  Plaintiff complied and Defendant received the forms, which indicated that Mr. O'Donnell had suffered from and been treated for high blood pressure, vascular disease, and other disorders within the two years preceding the date on which the O'Donnells signed the Policy.

5

It is undisputed at this point that the O'Donnells' representation that Mr. O'Donnell met the insurance eligibility requirements set forth in the Policy was false.  It is undisputed that both Plaintiff and Mr. O'Donnell were aware that Mr. O'Donnell had been seen, diagnosed, and treated for heart, kidney, circulatory, neurological conditions or high blood pressure in the two years preceding the date on which they signed the Policy.  It likewise is undisputed that the O'Donnells did not inform Defendant about Mr. O'Donnells ineligibility under the Policy at any point prior to Mr. O'Donnell's death.

Upon receiving Defendant's medical forms and determining that Mr. O'Donnell had been ineligible for coverage, Defendant denied Plaintiff's claim.  Defendant then sent Wells Fargo a check for $613.19, representing a refund for Mr. O'Donnell's portion of the premium.  Defendant also amended the Policy from joint coverage to single coverage.  Plaintiff filed this lawsuit shortly thereafter.

> D.   *The Parties' Claims*

Plaintiff alleges that Defendant breached the Policy by denying her claim.  Plaintiff contends that Misstated Terms Clause modifies the Incontestability Clause and allowed Defendant to amend the Policy based on "wrong information" only "within ninety (90) days of receipt of [the O'Donnells'] initial premium."  Accordingly, Plaintiff argues, because ninety days had elapsed after Defendant received the O'Donnells' initial premium, the Misstated Terms Clause precluded Defendant from contesting Mr. O'Donnell's eligibility under the Policy and denying Plaintiff's claim.  Plaintiff brings this claim on behalf of a class of similarly-situated individuals who had claims for life insurance denied after the 90-day time period had elapsed.

Plaintiff alleges that Defendant also breached the Policy in other ways. First, Plaintiff alleges that the Policy did not authorize Defendant to refuse to evaluate Plaintiff's claim unless she released confidential medical records. Plaintiff also alleges that the Policy did not authorize Defendant to unilaterally convert the same from joint coverage to single coverage, issue a refund to Wells Fargo upon determining that Mr. O'Donnell was never eligible for coverage, or issue a refund in the amount of $613.19. Plaintiff argues that, if Mr. O'Donnell was never eligible for coverage, "then the parties should have been returned to the positions they held before the transaction. . . . [Mr. O'Donnell] (or his heirs) should have been [sic] received the 'refunded' premium, not his lender." (*Id.* at PAGEID # 16.) Regarding the last point, Plaintiff argues that, even if Defendant acted properly in refunding Mr. O'Donnell's portion of the premium, it should have refunded half of the initial premium payment ($714.78) rather than the amount of $613.19. Plaintiff seeks to pursue these claims on behalf of a nationwide class of individuals similarly aggrieved by Defendant's conduct.

In addition to these breach of contract claims, Plaintiff also asserts a claim for declaratory relief pursuant to 28 U.S.C. § 2201 on behalf of a class of similarly-situated individuals. Plaintiff seeks a declaration that Defendant: (1) is not permitted to deny claims beyond the 90-day time period set forth in the "Misstated Terms" section, and (2) is not permitted to demand medical records as a condition for having a claim for life insurance death benefits evaluated unless the policy specifically reserves that right.

Plaintiff also asserts a claim for breach of the duty of bad faith and fair dealing on behalf of an Ohio damages subclass. In this claim, Plaintiff asserts: "Defendant systematically, and without a fair evaluation, denied coverage (and continues to deny coverage) under policies based

on subsequent 'eligibility' determinations made beyond ninety days from which it accepted consumers' premiums.  This violates in bad faith Defendant's duty to fairly evaluate and thoroughly review claims for benefits submitted by Plaintiff and members of the Ohio Damages Subclass."  (*Id.* ¶ 84.)  Plaintiff seeks punitive damages in connection with this claim.

Finally, Plaintiff asserts a claim for unjust enrichment/equitable restitution on behalf of an Ohio Damages Subclass.  Plaintiff's theory of this claim is that she and the class members "conferred a benefit upon Defendant by paying policy premiums at rates that exceed those authorized by OAC 3901-1-14(E)(10)."  (ECF No. 32 ¶ 104.)  Plaintiff requests restitution of this alleged overpayment.

Defendant filed a counterclaim to Plaintiff's complaint seeking rescission of the Policy. Defendant alleges, and Plaintiff admits, that at the time she signed the Policy, she "was aware that Mr. O'Donnell had been diagnosed with and/or received treatment for neuropathy, high blood pressure, peripheral vascular disease, carotid artery disease, Parkinson's disease, and atherosclerotic artery disease during the period of February 10, 2010 through February 10, 2012."  (ECF No. 34 ¶ 17.)  In its rescission claim, Defendant "seeks a declaration from this Court permitting [Defendant] to rescind the Policy as it relates to coverage for [the O'Donnells]."  (*Id.* ¶¶ 46–47.)

Defendant also asserts a counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201.  In this claim, Defendant seeks a declaration from the Court that: (1) Plaintiff's request for coverage and benefits under the Policy is precluded because the Contract of Insurance with regard to coverage for Decedent is void ab initio as a result of the O'Donnells' fraudulent misrepresentations on the Application, (2) Plaintiff's request for coverage and benefits under the

Policy is precluded under Ohio Revised Code § 3911.06, and (3) Plaintiff's request for coverage and benefits under the Policy is precluded because Mr. O'Donnell was not eligible for coverage and thus no contract was formed.

Defendant now moves for summary judgment on its counterclaims and on Plaintiff's claim for relief.  Plaintiff opposes the motion.  The Court will address the parties' arguments below.

## II.      ANALYSIS

### A.      Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234–35 (quoting

*Anderson*, 477 U.S. at 251–52).

### B. Defendant's Motion for Summary Judgment on its Counterclaim

Although Defendant asserts two claims for relief, the relief it seeks in each claim (a

declaration of its rights with respect to the Policy) is the same. The Court therefore addresses

both claims under the auspices of 28 U.S.C. § 2201.

Pursuant to § 2201, "[i]n a case of actual controversy within its jurisdiction, . . . any court

of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration . . . ." Courts in this circuit

consider five factors to determine whether declaratory relief is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the
> declaratory action would serve a useful purpose in clarifying the legal relations in
> issue; (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for res judicata;" (4)
> whether the use of a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state jurisdiction; and (5)
> whether there is an alternative remedy which is better or more effective.

*Grand Trunk W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Specifically in the insurance context, the Sixth Circuit has stated that declaratory judgment is

proper where the question before the court "involves only the extent of the coverage of an

insurance policy and not the liability of the insured to the persons injured in the accident." *Am.*

*States Ins. Co. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967) (quoting *Md. Cas. Co. v. Faulkner*,

126 F.2d 175, 178 (6th Cir. 1942)). In such a case, "the insurer is entitled to have the extent of

the coverage of its policy declared." *Id.*

Here, there can be no dispute that a declaration would serve a useful purpose in clarifying the legal relations at issue.  The Court finds that a declaratory judgment is proper.

The Court first addresses the issue of Ohio Revised Code § 3911.06's application to this case.  Defendant seeks a declaration that § 3911.06 precludes Plaintiff's claim and renders the Policy void ab initio with respect to Mr. O'Donnell.

Section 3911.06 of Ohio Revised Code, titled "False Answer," states:

No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

The Ohio Supreme Court has stated the following regarding § 3911.06:

[A]n insurer can satisfy the requirements of Section 3911.06, so as to establish an answer to an interrogatory by an applicant as a bar to recovery upon a policy, by clearly proving that

(1) the applicant willfully gave a false answer
(2) such answer was made fraudulently
(3) but for such answer the policy would not have been issued and
(4) neither the insurer nor its agent had any knowledge of the falsity of such answer.

*Jenkins v. Metro. Life Ins. Co*., 171 Ohio St. 557, 561–62, 173 N.E.2d 122 (1961).

The first question for the Court is one of statutory interpretation:  does the O'Donnells' signature on the Policy constitute a false "answer to any interrogatory" within the meaning of § 3911.06?  Plaintiff argues that the plain language of the statute does not apply because the O'Donnells were not presented with and did not answer any interrogatories in connection with the Policy.  Defendant argues that, notwithstanding the statute's plain language, "Ohio courts

11

apply R.C. 3911.06 to applications with affirmations similar to the one at issue here."  (ECF No.

37, at PAGEID # 356.)  Defendant cites caselaw in which a judicial officer from the Northern

District of Ohio found that "the Ohio statute intends to protect the insurer from a fraudulent

application."  (*Id*. at PAGEID # 359 (citing *New York Life Ins. Co. v. Wittman*, 813 F. Supp.

1287, 1298 (N.D. Ohio 1993)).  Defendant also cites a case in which an Ohio court found that an

affirmation in a life insurance policy "was in effect an interrogatory."  (*Id*. at PAGEID # 1461

(quoting *Am. Assur. Co. v. Early*, 34 Ohio C.D. 320, 1912 WL 827 (Ohio Cir. Ct. 1912)).)

Finally, Defendant argues that "[t]here is no rational reason to limit application of the statute to

circumstances where such health information is provided only by response to a question."  (*Id*.)

In interpreting § 3911.06, the Court is "obligated to decide the case as [it] believe[s] the

Ohio Supreme Court would do."  *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 648

(6th Cir. 2012) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d

381, 384 (6th Cir. 2009) (brackets omitted)).  The Court must look "first to final decisions of the

highest court of that state, in this case Ohio, and if there is no decision directly on point, the court

must make an *Erie* judgment as to how Ohio's courts would decide the issue."  *Kings Dodge,*

*Inc. v. Chrysler Grp., LLC*, 595 F. App'x 530, 534 (6th Cir. 2014).

"[T]he primary goal of statutory interpretation is to determine and give effect to the

legislature's intent when it enacted the statute."  *Id*. (citing *Sugarcreek Twp. v. City of*

*Centerville*, 133 Ohio St.3d 467, 979 N.E.2d 261 (2012)).  "When construing a statute, Ohio

courts first examine its plain language and apply the statute as written when the meaning is clear

and unambiguous."  *City of Columbus, Ohio*, 693 F.3d at 648 (quoting *AT&T Commc'ns of Ohio,*

*Inc. v. Lynch*, 132 Ohio St. 3d 92, 96, 969 N.E.2d 1166 (Ohio 2012) (brackets omitted)).

"[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Kings Dodge, Inc.*, 595 F. App'x at 534 (quoting *Estate of Heintzelman v. Air Experts, Inc*., 126 Ohio St. 3d 138, 931 N.E.2d 548 (2010)).  Only if the statute's meaning is ambiguous may the Court consider other factors such as the purposes underlying the statute.  *See id*. (citing Ohio Rev. Code Ann. § 1.49).

Turning to the statute at issue, § 3911.06 unambiguously limits its reach to "answer[s] to any interrogatory."  This language contains two distinct elements: "a formal question or inquiry," and an affirmative answer to the same.  *Interrogatory*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/interrogatory (last accessed March 16, 2016); *see also Kings Dodge, Inc*., 595 F. App'x at 535 (noting that, "[i]n determining the 'common, everyday meaning of a word, [Ohio courts] have consistently used dictionary definitions' " (quoting *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 786 N.E.2d 889 (2003))).  In *Jenkins*, for example, the Ohio Supreme Court considered an insurance application that contained the question: "Have to you ever consulted any physician, healer, or other practitioner within the last 5 years for any reason not mentioned above?" to which the applicant answered, "No."  171 Ohio St. at 559.  Most of the cases on which Defendant relies discuss insurance applications with similar questions and answers.  *See, e.g., Long v. Time Ins. Co*., 572 F. Supp. 2d 907, 909 (S.D. Ohio 2008) (analyzing an applicant's answer of "no" to the question: [w]ithin the last five (5) years, have you . . . ever received any medical or surgical consultation, advice, or treatment including medication for [certain medical conditions]?").

Here, Defendant does not identify an interrogatory presented to the O'Donnells in connection with the Policy.  Defendant likewise does not identify an affirmative answer to a formal inquiry that the O'Donnells gave.  The plain language of § 3911.06 therefore does not apply to the facts of this case.

Defendant's arguments to the contrary are without merit.  First, the Court disagrees with Defendant's statement that there is no rational reason to limit application of the statute to circumstances in which information is provided in response to a question.  Limiting the statute in this way ensures that it reaches only affirmative conduct in which an applicant provides false information in response to a question that he or she necessarily read.  Because the statute expressly limits its reach to willful conduct, it is not "irrational" to conclude that the statute's plain language was intended to reach only affirmative misstatements.  Indeed, one might rationally conclude that the General Assembly chose to limit § 3911.06 in order to avoid situations like the present one, in which the applicant claims that he or she did not read the policy before signing it.

Second, although Defendant cites caselaw in which two Ohio appellate courts and one federal district court purported to apply § 3911.06 or a related statute to facts similar to the facts at issue here, none of those cases discuss the statutory interpretation issue or otherwise explain why § 3911.06 should be interpreted inconsistently with its plain language.  These cases therefore provide no persuasive value on the issue of whether the Ohio Supreme Court would apply the statute to the facts of this case.  The quote from a judicial officer in the Northern District of Ohio that a related statute "intends to protect the insurer from a fraudulent application," *New York Life Ins. Co.*, 813 F. Supp. at 1301, likewise does not address § 3911.06's

reference to "answer[s]" to "interrogator[ies]."  The *New York Life Insurance* court's quote is especially unpersuasive in this context because statutory purpose only becomes relevant if the statute's language is ambiguous, which is not the case here.  *See Kings Dodge, Inc.*, 595 F. App'x at 534.

Defendant's final argument, as stated above, is that an Ohio circuit court previously found that an affirmation in a life insurance policy "was in effect an interrogatory."  (ECF No. 37, at PAGEID # 1461 (quoting *Am. Assur. Co. v. Early*, 34 Ohio C.D. 320, 1912 WL 827 (Ohio Cir. Ct. 1912)).)  But the *American Assurance Co*. court's entire analysis of this issue is as follows: "[T]he application was on a blank furnished by the company; it was in effect an interrogatory."  *Am. Assur. Co*., 34 Ohio C.D. at 324.  The Court finds that this limited analysis does not support Defendant's statement that "it has long been the law in Ohio" that courts interpret the word "interrogatory" inconsistently with its plain language.  (ECF No. 55, at PAGEID # 1461.)

The Court concludes that § 3911.06 does not apply to the facts of this case.  The Court need not address the parties' arguments regarding whether § 3911.06 applies to group life insurance and/or whether § 3911.06 allows for rescission after loss.

Having rejected Defendant's arguments regarding § 3911.06, the Court is left with Defendant's counterclaim for rescission under Ohio common law.  Defendant argues that a party seeking to rescind a contract on the ground that it was procured by fraudulent misrepresentations must prove five elements:

> (1) that there were actual or implied misrepresentations of material matters of fact; (2) that such representations were false; (3) that such representations were made by one party to the other with knowledge of their falsity; (4) that they were made with the intent to mislead a party to rely thereon and (5) that such party relied on such representations with a right to rely thereon.

15

(*Id*. (quoting *Fifth Third Mortg. Co. v. Chicago Title Ins. Co*., 758 F.Supp.2d 476, 487 (S.D. Ohio 2010)).

The standard set forth in *Fifth Third Mortgage Co*. does not support Defendant's position that it is entitled to rescind the Policy in this case. A brief summary of Ohio insurance law provides the necessary context for this statement.

Courts applying Ohio law to insurance contracts (outside the confines of § 3911.06) must distinguish between representations and warranties. *See Ramsey v. Penn Mut. Life Ins. Co*., 787 F.3d 813, 821 (6th Cir. 2015) (citing *James v. Safeco Ins. Co. of Ill*., 195 Ohio App. 3d 265, 959 N.E.2d 599 (2011)); *see also Allstate Ins. Co. v. Boggs*, 27 Ohio St. 2d 216, 218–19, 271 N.E.2d 855 (1971). "[A] representation is a statement made prior to the issuance of the policy which tends to cause the insurer to assume the risk." *Boggs*, 27 Ohio St. 2d at 219. "A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." *Id*. (citing *Harford Protection Ins. Co. v. Harmer* (1853), 2 Ohio St. 452). "The insurer's decision to incorporate the statement in or to omit it from the policy generally controls whether the statement is a warranty or a representation." *Id*.

The distinction between a warranty and a representation in an insurance contract is important: whereas a misstatement of fact in a warranty voids a policy ab initio, a misrepresentation by the insured renders the policy voidable at the insurer's option. *See id.* at 218–19. Notably for purposes of this case, if an insurance contract is voidable (as opposed to void ab initio), an insurer cannot void the contract after liability has accrued. *See id*.; *see also Ramsey*, 787 F.3d at 821. As such, the Ohio Supreme Court has held that an insurance policy

16

must clearly and unambiguously state that a misstatement by the insured will render the policy void ab initio in order for the statement to be considered a warranty.  *Id.*

The court in *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.* reiterated this standard.  *See* 758 F. Supp. 2d at 488 (quoting *Boggs*, 271 N.E.2d at 857).  The *Fifth Third* court explicitly noted that the five-pronged standard it cited (which Defendant cites in support of its position in this case) did not apply because the insurer was attempting to void a policy based on a misrepresentation after it had incurred liability under that policy.  *See id.*  In effect, the *Fifth Third* court acknowledged that a party can rescind a contract based on fraudulent misrepresentations if it can prove the five elements Defendant cites, but only if the rescission occurs before liability accrues under the policy.

Defendant's claim for common law rescission therefore turns on whether the O'Donnells' false statements in the Policy are warranties or representations.  Defendant does not argue that the statements are warranties.  In response to Plaintiff's arguments that the statements at issue are representations, Defendant argues only that the distinction is irrelevant under § 3911.06.

The Court therefore will assume that the statements at issue are representations for purposes of this Opinion and Order.  Liability under the Policy accrued once Plaintiff submitted proof of Mr. O'Donnell's death to Defendant.  *See* ECF No. 37-1, at PAGEID # 387 ("If you or the insured Co-Borrower dies while insured, we will pay the amount of insurance then in force after we receive proof of death.")  Because Defendant did not attempt to rescind the Policy before that time, the five-pronged test set forth in *Fifth Third Mortgage Co.* does not apply.  The Court accordingly **DENIES** Defendant's motion for summary judgment on its counterclaim.

### C.    Defendant's Motion for Summary Judgment on Plaintiff's Claims

#### 1.    *"Wrongful Denial" Breach of Contract and Declaratory Judgment Claims*

Defendant argues that it is entitled to summary judgment on Plaintiff's claims for breach of contract and for a declaratory judgment that Defendant wrongfully denied Plaintiff's insurance claim.  Defendant argues that the Policy is "void" with respect to Mr. O'Donnell.  (ECF No. 37, at PAGEID # 364.)  The cases Defendant cites in support of its position, however, stand for the proposition that "a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option."  (*Id.* (quoting *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009)).

As stated above, a voidable insurance contract is not void.  Rather, it is subject to rescission by the insurer before liability accrues under the policy.  *See, e.g., Boggs*, 27 Ohio St. 2d at 221; *see also Ramsey*, 787 F.3d at 821.  Defendant's only response to Plaintiff's arguments on this point is that § 3911.06 applies and allows for rescission after liability accrues.  Because the Court has already concluded that § 3911.06 does not apply, Defendant's request for summary judgment on Counts I and II of Plaintiff's complaint fails.

#### 2.    *Other Breach of Contract Claims (Count III)*

In Count III of her complaint, Plaintiff alleges that Defendant breached the Policy in three ways: (1) by requesting that she release Mr. O'Donnell's medical records before Defendant would review the claim, (2) by converting the Policy into an individual policy after it denied Plaintiff's claim, and (3) by refunding part of the premium to Wells Fargo.  All of Defendant's arguments in this section hinge on the premise that it was entitled to rescind Mr. O'Donnell's coverage after it received proof of his death.  But, as stated above, an insurer cannot rescind an

insurance policy based on a misrepresentation after liability has accrued.  Defendant's arguments regarding Count III of Plaintiff's complaint therefore fail.

Defendant's arguments fail for additional reasons.  Regarding the issue of whether Defendant was entitled to request Mr. O'Donnell's medical records before processing Plaintiff's claim, the Policy clearly obligated Defendant to "pay the amount of insurance then in force after it receive[d] proof of death."  (ECF No. 37-1, at PAGEID # 387.)  Nothing in the Policy authorized Defendant to delay payment, after receiving proof of death, in order to obtain and evaluate the deceased's medical records.  Defendant's argument that nothing in the Policy prevented it from requesting medical records after it received proof of death is disingenuous.  If accepted, Defendant's proposed interpretation of the Policy would have allowed it to delay processing Plaintiff's claim indefinitely simply because nothing in the Policy explicitly prevented it from doing so.

Defendant's alternative argument that Plaintiff signed the medical release voluntarily likewise fails.  At most, this argument creates a question of fact as to whether Defendant would have processed Plaintiff's claim had she refused to release Mr. O'Donnell's medical records.  This argument does not entitle Defendant to summary judgment on this claim.

Regarding the issue of whether Defendant breached the Policy by refunding part of the premium to Wells Fargo, Defendant argues that "refunds" under the Policy were to be made "to the Creditor for credit to your account."  (ECF No. 37-1, at PAGEID # 388.)  But this section of the Policy is limited to certain situations in which "insurance stops," none of which apply to the facts of this case.  *See id.*[1]  The "refund" of Mr. O'Donnell's portion of the premium is outside

---

[1] This section of the Policy states:

the scope of "refunds" contemplated by the Policy.  The Policy language indicating that refunds are to be made to Wells Fargo therefore does not apply to the facts of this case.

In short, none of the arguments Defendant proffers entitle it to summary judgment on this claim.  The Court accordingly **DENIES** Defendant's motion for summary judgment on Count III of Plaintiff's complaint.

### 3.  Bad Faith (Count IV)

Defendant argues that it is entitled to summary judgment on Plaintiff's bad faith claim because it (Defendant) had a reasonable justification for denying Plaintiff's claim.  Defendant asserts that the reasonable justification is Plaintiff's material misrepresentation regarding Mr. O'Donnell's eligibility for coverage under the Policy.  The case Defendant cites in support of its position, however, is one in which § 3911.06's predecessor applied and permitted the insurer to rescind the contract.  Because § 3911.06 does not apply in this case, the cited caselaw is inapposite.

The Court agrees with Plaintiff that genuine issues of material fact exist with respect to Defendant's knowledge and motivation in denying her claim for benefits.  Defendant fails to prove, as a matter of law, that Plaintiff cannot satisfy the elements of this claim.  The Court accordingly **DENIES** Defendant's motion for summary judgment on Count IV.

### 4.  Unjust Enrichment / Equitable Restitution (Count V)

Defendant argues that it is entitled to summary judgment on Plaintiff's unjust enrichment claim because an express contract covers the subject matter at issue in this case.  Plaintiff

---

WHEN INSURANCE STOPS – REFUNDS: Your insurance coverage stops on the earliest of the following dates: (a) the date of your written cancellation request; (b) the Expiration Date as shown in the Schedule; (c) when your loan is paid in full; (d) when your loan is renewed; (e) when your loan is refinanced; (f) when repossession occurs; (g) when the Creditor files an Affidavit of Repossession; or (h) when your loan otherwise stops.

(*Id.*)  None of these situations cover a "refund" in the event the Policy is rescinded.

responds that this proposition of law does not apply where, as here, there exists evidence of bad faith.  In response to this argument, Defendant argues that it did not act in bad faith by denying Plaintiff's claim because it had a reasonable justification for doing so.

Because the Court rejected Defendant's arguments with respect to the bad faith claim, it likewise rejects Defendant's argument here.  The Court therefore **DENIES** Defendant's motion for summary judgment on Count V.

## III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment in its entirety.  (ECF No. 36.)

**IT IS SO ORDERED**.

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

21