UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHEELA K. O'DONNELL,

     Plaintiff,

                              Case No. 2:14-cv-1071
    v.                       JUDGE GREGORY L. FROST
                              Magistrate Judge Norah McCann King

FINANCIAL AMERICAN LIFE
INSURANCE CO.,

     Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's motion for class certification (ECF Nos. 48 & 50), Defendant's response in opposition (ECF No. 56), and Plaintiff's reply memorandum (ECF Nos. 59 & 60). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I.     BACKGROUND

The facts of this case are set forth in the Court's March 21, 2016 Opinion and Order denying Defendant's motion for summary judgment. For ease of reference, relevant background facts are repeated below.

     *A. The Parties*

Defendant Financial American Life Insurance Co. offers credit life insurance policies. Such policies, available to consumers financing credit transactions, offer payments to the consumer's lender in the event the consumer dies or becomes disabled. Defendant offers its

policies exclusively at automobile dealerships, where Defendant trains the dealership's employees how to offer the policies to customers.  Tri-County Chrysler Dodge Jeep in Health, Ohio ("Tri-County") was one of these dealerships.

On February 10, 2102, Plaintiff Sheela K. O'Donnell and her late husband, Daniel O'Donnell, Sr., purchased a new automobile from Tri-County.  The O'Donnells financed the automobile purchase through Wells Fargo Dealer Service ("Wells Fargo").

In connection with the purchase, a Tri-County agent solicited the O'Donnells to purchase one of Defendant's policies.  The agent told the O'Donnells that it would benefit them to purchase credit life insurance since they were both in their sixties.  The agent then presented the O'Donnells with an application for credit life insurance (the "Policy").  The agent did not inform the O'Donnells of any restrictions on their ability to purchase the insurance or otherwise discuss the O'Donnells' suitability for the insurance.  The agent similarly did not ask any questions about the O'Donnells' heath history.

### B.  The Policy and its Terms

The parties highlight several of the Policy's provisions.  The following provisions relate to the O'Donnells' eligibility for the Policy:

THE FOLLOWING ARE MY REPRESENTATIONS AND
ACKNOWLEDGMENT OF INSURABILITY REQUIREMENTS
ELIGIBILITY REQUIREMENT:

. . .

1. I am not eligible for any insurance if I now have, or during the past two (2) years have been seen, diagnosed or treated (including medication) by a doctor or member of the medical profession for: (a) a disease or disorder of the: Brain, Heart, Lung, Liver, Kidney, Respiratory System, Circulatory System, Digestive System, Neurological/Muscular System; (b) Cancer; High Blood Pressure (prescribed and/or taking more than one medication); Edema; Stroke; Diabetes; Alcoholism; Drug Abuse; Morbid Obesity (and/or complications

2

directly related to); or a Psychological or Psychiatric Illness; (c) an HIV Positive test result; or (d) weight reduction surgery (had or recommended to have).

. . .

YOUR CERTIFICATE MAY NOT BE IN FORCE WHEN YOU HAVE A CLAIM! PLEASE READ!

Your certificate is issued based on the information entered in this Application.  If, to the best of your knowledge and belief, there is any misstatement in this Application or if any information concerning the medical history of any insured person has been omitted, you should advise the Company, otherwise your Certificate may not be a valid contract.

My signature below acknowledges that I have read and understand the above Insurability Requirements and represent that I meet both the Eligibility Requirements and the Statement of Insurability and am eligible for the coverage as requested in the Schedule.  I further understand and agree that I am insured only if I have signed below and I agree to pay the premiums for this insurance. . . .

(ECF No. 37-1, at PAGEID # 386.)

Below that clause, the O'Donnells both signed the Policy:

> **WARNING:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an Application or files a claim containing a false or deceptive statement is guilty of insurance fraud.
>
> Primary Borrower's _Sheila K. Hinman_ 09/10/12   Co-Borrower's _David D. Odonnell_
>
> Date                                   Date

(*Id.*)

Plaintiff testified that neither she nor Mr. O'Donnell read the Policy before signing it. The Tri-County agent did not instruct the O'Donnells not to read the Application or obstruct the O'Donnells from doing so.  Plaintiff testified that she and Mr. O'Donnell had signed other applications for credit life insurance in the past without reading them.

Following the Policy's Eligibility section is a section entitled CERTIFICATE OF INSURANCE.  This section states:

3

> We certify that, if we have been paid the premium shown in the Application, you are insured for the coverage shown in the Application, subject to the terms of the Group Policy issued to the Creditor and acceptance by us.  Our acceptance will be in accordance with our procedures and practices.  Under no circumstances will acceptance occur before sixty (60) days of the receipt of the Application. . . .  All benefit payments are made to the Creditor shown in the Application to pay off or reduce your debt.  If benefit payments are more than the balance of your loan, we will pay the difference to you or to a named Second Beneficiary. . . .

The PAYMENT OF A DEATH BENEFIT section below the CERTIFICATE OF INSURANCE SECTION states:

> If you or the insured Co-Borrower dies while insured, we will pay the amount of insurance then in force after we receive proof of death.  Only one death benefit is payable under this Certificate.  Payment of a death benefit terminates all insurance coverage under this Certificate.  We will not pay more than the decreasing insurance balance of the initial amount of life insurance.

(*Id*. at PAGEID # 387.)

It is undisputed that the O'Donnells paid a premium of $1,429.56 at the time they signed the Policy.  This premium, according to Plaintiff, purchased $30,629.93 worth of credit life insurance over a period of 75 months, payable to Wells Fargo in the event the O'Donnells died or became disabled.  Defendant accepted the premium payment, meaning that the O'Donnells became "insured for the coverage shown in the Application, subject to the terms of the Group Policy issued to the Creditor."  (*Id*.)  Defendant therefore became obligated to "pay the amount of insurance then in force after we receive proof of death" in the event that either of the O'Donnells died while insured.  (*Id*.)

The Policy also contains a GENERAL PROVISIONS section.  That section contains the following incontestability provision:

> INCONTESTABILITY: We will not contest this insurance: (a) except for non-payment of a premium, after it has been in force two (2) years during the Insured Borrower's lifetime . . . or (b) during the first two (2) years it is in force unless the contest is based on a written statement signed by the Insured Borrower and

4

furnished to the Insured Borrower or the beneficiary.  All statements made by you and your insured Co-Borrower, in the absence of fraud, are deemed representations and not warranties.

(*Id*. at PAGEID # 388.)

The Policy later contains the following MISSTATED TERMS clause:

MISSTATED TERMS:  If we provided an incorrect amount of insurance to you because we were given wrong information, we will amend your coverage to provide the correct amount. Any excess premium will be refunded to the person entitled to it.  If we do not refund the excess premium within ninety (90) days of receipt of your initial premium, your coverage will remain in force as submitted.

(*Id*.)  It is undisputed that Defendant did not contest the Policy at any time before Mr. O'Donnell's death.

### C.  Mr. O'Donnell's Death

Approximately a year and a half after the O'Donnells purchased the Policy, on October 16, 2013, Mr. O'Donnell died.  Plaintiff submitted a claim to Defendant for a life benefit payment pursuant to the Policy.  The balance owed on the loan at that time was approximately $21,000.

Plaintiff included a certified copy of Mr. O'Donnell's death certificate with her claim. The death certificate lists Mr. O'Donnell's cause of death as myocardial infarction due to coronary artery disease and hypercholesterolemia.  The death certificate also lists conditions contributing to Mr. O'Donnell's death as hypertension, atrial fibrillation, congestive heart failure, peripheral vascular disease, and esophageal cancer.

Defendant requested additional information from Plaintiff.  Specifically, Defendant presented Plaintiff with authorization forms to obtain Mr. O'Donnell's medical records.  Plaintiff complied and Defendant received the forms, which indicated that Mr. O'Donnell had suffered

from and been treated for high blood pressure, vascular disease, and other disorders within the two years preceding the date on which the O'Donnells signed the Policy.

It is undisputed at this point that the O'Donnells' representation that Mr. O'Donnell met the insurance eligibility requirements set forth in the Policy was false.  It is undisputed that both Plaintiff and Mr. O'Donnell were aware that Mr. O'Donnell had been seen, diagnosed, and treated for heart, kidney, circulatory, neurological conditions or high blood pressure in the two years preceding the date on which they signed the Policy.  It likewise is undisputed that the O'Donnells did not inform Defendant about Mr. O'Donnell's ineligibility under the Policy at any point prior to Mr. O'Donnell's death.

Upon receiving Defendant's medical forms and determining that Mr. O'Donnell had been ineligible for coverage, Defendant denied Plaintiff's claim.  Defendant then sent Wells Fargo a check for $613.19, representing a refund for Mr. O'Donnell's portion of the premium.  Defendant also amended the Policy from joint coverage to single coverage.  Plaintiff filed this lawsuit shortly thereafter.

###### D.    *Claims Relevant to Class Certification*

Plaintiff alleges that Defendant breached the Policy by denying her claim.  Plaintiff asserts three alternative breach of contract theories: (1) that Defendant breached the Policy by rescinding Mr. O'Donnell's coverage after receiving his death certificate based on a misrepresentation in his application; (2) that Defendant breached the Policy by requesting Mr. O'Donnell's medical records after receiving his death certificate and subsequently denying Plaintiff's claim; and (3) that Defendant breached the Policy by contesting Mr. O'Donnell's

eligibility for coverage after the ninety-day period set forth in the Misstated Terms clause elapsed.

In addition to the breach of contract claim, Plaintiff also asserts a claim for declaratory relief pursuant to 28 U.S.C. § 2201.  Plaintiff seeks a declaration that Defendant is not permitted to demand medical records before it will evaluate a claim.

Plaintiff also asserts a claim for breach of the duty of bad faith and fair dealing on behalf. In this claim, Plaintiff asserts that Defendant acted in bad faith by rescinding Mr. O'Donnell's coverage and denying Plaintiff's claim for benefits.  Plaintiff seeks punitive damages in connection with this claim.

Defendant filed a counterclaim to Plaintiff's complaint seeking rescission of the Policy. Defendant alleged, and Plaintiff admits, that at the time she signed the Policy, she "was aware that Mr. O'Donnell had been diagnosed with and/or received treatment for neuropathy, high blood pressure, peripheral vascular disease, carotid artery disease, Parkinson's disease, and atherosclerotic artery disease during the period of February 10, 2010 through February 10, 2012."  (ECF No. 34 ¶ 17.)  In its rescission claim, Defendant sought "a declaration from this Court permitting [Defendant] to rescind the Policy as it relates to coverage for [the O'Donnells]."  (*Id*. ¶¶ 46–47.)

Defendant also asserted a counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201.  In this claim, Defendant sought a declaration from the Court that: (1) Plaintiff's request for coverage and benefits under the Policy is precluded because the Policy is void ab initio with respect to Mr. O'Donnell, (2) Plaintiff's request for coverage and benefits under the Policy is precluded under Ohio Revised Code § 3911.06, and (3) Plaintiff's request for coverage and

benefits under the Policy is precluded because Mr. O'Donnell was not eligible for coverage and thus no contract was formed.

## II.     THE COURT'S MARCH 31, 2016 OPINION AND ORDER

Defendant moved for summary judgment on its counterclaims and on Plaintiff's claims. In support of its motion, Defendant relied heavily on Ohio Revised Code § 3911.06, which states:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

Because the representation at issue in this case was not an "answer to any interrogatory," however, the Court found that § 3911.06 did not apply.

Defendant offered the alternative argument that Ohio's common law allowed it to void Plaintiff's claim for benefits based on the misrepresentation.  The Court stated the following with respect to Ohio insurance law:

> Courts applying Ohio law to insurance contracts (outside the confines of § 3911.06) must distinguish between representations and warranties.  *See Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 821 (6th Cir. 2015) (citing *James v. Safeco Ins. Co. of Ill.*, 195 Ohio App. 3d 265, 959 N.E.2d 599 (2011)); *see also Allstate Ins. Co. v. Boggs*, 27 Ohio St. 2d 216, 218–19, 271 N.E.2d 855 (1971).  "[A] representation is a statement made prior to the issuance of the policy which tends to cause the insurer to assume the risk."  *Boggs*, 27 Ohio St. 2d at 219.  "A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy."  *Id.* (citing *Harford Protection Ins. Co. v. Harmer* (1853), 2 Ohio St. 452).  "The insurer's decision to incorporate the statement in or to omit it from the policy generally controls whether the statement is a warranty or a representation."  *Id.*

8

The distinction between a warranty and a representation in an insurance contract is important: whereas a misstatement of fact in a warranty voids a policy ab initio, a misrepresentation by the insured renders the policy voidable at the insurer's option.  *See id.* at 218–19.  Notably for purposes of this case, if an insurance contract is voidable (as opposed to void ab initio), an insurer cannot void the contract after liability has accrued.  *See id.*; *see also Ramsey*, 787 F.3d at 821.  As such, the Ohio Supreme Court has held that an insurance policy must clearly and unambiguously state that a misstatement by the insured will render the policy void ab initio in order for the statement to be considered a warranty.  *Id.*

(ECF No. 64, at PAGEID # 1846–47.)  Because Defendant effectively conceded that the statements at issue are representations and not warranties, and because Defendant did not attempt to rescind the Policy before it received proof of Mr. O'Donnell's death, the Court denied Defendant's request for summary judgment on its rescission claim.

### III.    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff now moves for class certification on behalf of four proposed classes.  In support of her motion, Plaintiff asserts that Defendant processes claims pursuant to a standardized policy.  That process includes four relevant steps that the assigned claims examiner must follow when he or she receives a claim for benefits.

First, using the software program Xycor, the claims examiner must confirm that a certificate of insurance was active on the insured's date of death.  Second, the claims examiner must ensure that the claim benefit form, certified death certificate, and executor papers are attached to the claim.  If, from the information provided on these documents, the claims examiner discerns that the "diagnosis is not a direct result of an accident and incurred date is within 2 years of the effective date," the examiner should conduct an "Evidence of Insurability" ("EOI") investigation.  (MONTOYA DEP AT FAMLI000504-505).

Step Three of the process is the EOI investigation.  The claims examiner should request and review medical records covering the previous two years, review any undisclosed medical history and compare that history to the information provided by the insured at the time he or she signed the policy, update the claim file with any new information, and "[i]f appropriate, . . . rescind coverage and refund applicable premium."  (ECF No. 50-10, at PAGEID # 1059.)  The Xycor program provides the claims examiner with a standard release authorization form to send to the insured.

At that point in the process, the claims examiner must calculate the benefits payable or compose a denial letter.  Defendant's policy with respect to denying claims states:

- If benefits are denied, proceed to status action screen and select/enter appropriate status action code; then to the letter selection screen and prepare appropriate denial letter.
- If benefits are denied and coverage is rescinded; proceed to status action screen and select/enter appropriate status action code (303); and complete claim rescission form to expedite coverage cancellation and premium refund date.

(*Id.*)

The status action code "3DL" represents claims denied based on alleged misrepresentations of health status during the application process.  It is undisputed that all applicants whose file contains the 3DL action code submitted a claim for benefits, along with the death certificate of the insured, and subsequently had their claims denied for misrepresentations discovered during the EOI investigation.

There are 110 Ohio claimants who had their claims for benefits denied pursuant to the 3DL status action code.  Plaintiff seeks to represent this class of individuals ("Damages Class One") in pursuing her breach of contract and bad faith claims.  In support, Plaintiff cites Ohio

10

case law for the proposition that Defendant cannot void a policy based on a misrepresentation after it receives proof of the insured's death (i.e., after liability accrues under the policy).

Plaintiff also seeks to represent a second class consisting of the 110 Ohio claimants as well as 145 Michigan claimants who had their claims for benefits denied pursuant to the 3DL status action code ("Damages Class Two").  Plaintiff seeks to represent this class under the theory that Defendant breached the policies at issue by refusing to process claims unless and until the claimants provided medical records, "as well as Defendant's subsequent wrongful denials of claims based on the contents of those medical records."  (ECF No. 50, at PAGEID # 964.)  Plaintiff asserts that "the Ohio and Michigan policies are substantively identical as it relates to this issue."  (ECF No. 50, at PAGEID # 958.)  Plaintiff does not argue that Michigan has a statute similar to Ohio Revised Code § 3911.06 or that Michigan's common law parallels Ohio's common law on the issue of whether and when an insurance company can void a policy based on an insured's misrepresentations on the application.

For her third proposed class ("Injunctive Class"), Plaintiff seeks to represent a class of current policyholders in Ohio and Michigan.  Plaintiff characterizes this proposed class as "an "injunctive class to stop Defendant from requiring claimants in Ohio and Michigan to provide this broad release as a condition of having their claim evaluated."  (*Id*.)  Plaintiff "asserts claims for declaratory judgment and injunctive relief on behalf of the Injunctive Class."  (*Id*. at PAGEID # 962.)

Plaintiff also seeks to represent a fourth class of individuals harmed under a different theory of liability.  In addition to Plaintiff's claim that Defendant breached the Policy by requesting medical records and denying claims after receiving an insured's death certificate,

Plaintiff asserts that Defendant breached the Policy by contesting Mr. O'Donnell's eligibility for coverage after the 90-day period for contesting liability had elapsed.  Plaintiff argues that, under standard principles of contract interpretation, the Misstated Terms clause modified the Incontestability clause and rendered moot the two-year period that the Policy explicitly reserves to contest an insured's eligibility for coverage.

Plaintiff asserts that this proposed class includes the Ohio claimants (103 in total) and all Missouri claimants (97 in total) whose claims were denied pursuant to the 3DL status action code after the time period set forth in the Misstated Terms clause elapsed ("Damages Class Three").  Plaintiff asserts that the Ohio and Missouri policies are virtually identical in all relevant respects, with the exception that the Misstated Terms clause in the Missouri policy allows Defendant thirty days (as opposed to ninety) to correct the amount of insurance coverage provided.  Plaintiff further asserts that Missouri contract law and Ohio contract law are similar in all relevant respects such that she can adequately represent the 200 Ohio and Missouri claimants who had claims denied after the relevant time period had expired.

Defendant opposes Plaintiff's request for certification of each of the four classes.  The Court proceeds to address the parties' arguments below.

### IV.    ANALYSIS

#### A.    Standard of Review

This Court recently set forth the general rules that apply to any class certification analysis:

> Plaintiff bears the burden of proof on her motion for class certification. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982)). The United States Supreme Court summarized that burden as follows:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).

*Comcast v. Behrend*, ––– U.S. ––––, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotations and citations omitted).

As for the Court's responsibility under Rule 23, it is well established that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Id*. (quoting *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. ––––, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011)). Oftentimes, that "rigorous analysis" requires the Court to "probe behind the pleadings before coming to rest on the certification question," which frequently will entail "overlap with the merits of the plaintiff's underlying claim." *Id*. "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. (internal quotations omitted).

The Supreme Court has cautioned, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, ––– U.S. –––– –, 133 S. Ct. 1184, 1194–95, 185 L. Ed. 2d 308 (2013) (citing *Wal–Mart Stores*, 131 S. Ct. at 2551). In other words, district courts may not "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool*, 722 F.3d 838, 851–52 (6th Cir. 2013) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)).

*McDonald v. Franklin Cty., Ohio*, 306 F.R.D. 548, 555–56 (S.D. Ohio 2015).  The Court proceeds to consider the Rule 23 factors with respect to each of the proposed classes.

## B.    Damages Class One

As stated above, Plaintiff seeks to represent 110 Ohio claimants who submitted claims for benefits (including proof of death) and had their claims denied pursuant to the 3DL status action

code.  Plaintiff seeks certification of this class with respect to her breach of contract and bad faith claims.

> *1.      Rule 23(a)*

The Court may certify a class action only if it meets the four prerequisites set forth in Rule 23(a).  They are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

To prove numerosity, Plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In Re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir. 1976), *cert. denied,* 429 U.S. 870, 97 (1976)).  Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc., v. EEOC,* 446 U.S. 318, 330 (1996).  Although "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *McGee v. East Ohio Gas Co.,* 200 F.R.D. 382, 389 (S.D. Ohio 2001) (quotation and citations omitted).

Regarding the second factor, commonality, Plaintiff must prove that "the class members have suffered the same injury."  *Wal-mart*, 131 S. Ct. at 2551 (citing *Falcon*, 457 U.S. at 157).

The claims "must depend on a common contention . . . of such a nature that is capable of classwide resolution—which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Stated differently, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation. *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003) (citing *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)).

The third factor is typicality. Plaintiff must prove that the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (quoting *In re Am. Med. Sys*., 75 F.3d at 1082). This requirement insures that the class representative's interests are aligned with the interests of the class members so that, by pursuing his or her own interests, the class representative also advances the class members' interests. *Id*. A plaintiff's claim is typical of the class if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In Re Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3–4 (3d ed. 1992)); *see also Salvagne v. Fairfield Ford Inc.,* 254 F.R.D. 321, 328 (S.D. Ohio 2009) ("In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." (quoting *In Re Catfish Antitrust Litig.,* 826 F.Supp. 1019, 1035 (N.D. Miss. 1993))). The plaintiff's claims need not be factually

identical to the class members' claims in order to satisfy the typicality requirement. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).

The concepts of commonality and typicality "tend to merge" in practice because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores*, 131 S.Ct. at 2551 n. 5 (quoting *Falcon*, 457 U.S. at 157–158, n. 13).

Courts analyzing Rule 23(a)(4)'s adequacy of representation requirement must consider two criteria: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[] will vigorously prosecute the interests of the class though qualified counsel." *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)). The first criterion overlaps the typicality requirement. *In re Am. Med. Sys.*, 75 F.3d at 1083; *see also In re Dry Max Pampers*, 724 F.3d 713, 721 (6th Cir. 2013) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012))). The second criterion "raises concerns about the competency of class counsel." *Falcon*, 457 U.S. at 157 n. 13. Because the final judgment is binding on all class members, both criteria are essential to insure due process. *In re Am. Med. Sys.*, 75 F.3d at 1083.

Here, Plaintiff argues that the members of Damages Class One are easily identifiable because of the 3DL status action code placed on each of the proposed class members' files.

Plaintiff further argues that numerosity is satisfied because joinder of all 110 Ohio claimants to this litigation would be impracticable.  Defendant does not dispute this contention.  The Court agrees with Plaintiff that numerosity is satisfied with respect to Damages Class One.

Plaintiff next argues that Damages Class One meets Rule 23(a)'s commonality requirement because the question of whether Defendant breached the policy and acted in bad faith by denying a claim for death benefits after the claimant had satisfied all contractual prerequisites for payment (i.e., submitting proof of death) is common to the class.  In response, Defendant argues that Ohio common law and statute bars recovery on this theory.  The Court already rejected that argument in its March 21, 2016 Opinion and Order denying Defendant's motion for summary judgment.

Defendant further argues that the defenses available to it "involve[] numerous questions not susceptible to class-wide proof"  because "the eligibility conditions, representations, knowledge of Financial American and its agents, and the intentions of each proposed class member will vary."  (ECF No. 56, at PAGEID # 1530–31.)  Even if true, however, each class member's claim challenges Defendant's general policy of denying claims because of misrepresentations in the application process after receiving proof of the insured's death.  The legal question presented—whether Ohio law permits Defendant to rescind coverage based on a misrepresentation after liability has accrued—is the same for each class member regardless of the differences Defendant cites.  This question is central to each individual's claim and can be resolved "in one stroke."  *Wal-mart*, 131 S. Ct. at 2551.  The Court accordingly agrees with Plaintiff that commonality is satisfied with respect to Damages Class One.

Plaintiff next argues that typicality is satisfied because her injury and theory of recovery is typical of the absent class members' injuries and theories of recovery.  In response to this argument, Defendant argues only that Ohio law bars Plaintiff's claim and permits Defendant to rescind the Policy based on Plaintiff's misrepresentation.  The Court rejected this argument in its March 21, 2016 Opinion and Order denying Defendant's motion for summary judgment.  The Court accordingly finds that Damages Class One satisfies Rule 23(a)(3)'s typicality requirement.

Finally, regarding the last Rule 23(a) factor, Plaintiff argues that she is an adequate class representative because she shares common interests with the class and because she will vigorously prosecute this action.  Plaintiff asserts that she seeks to rectify Defendant's wrongful denial of her claim, which is an interest common to all members of the class.  Plaintiff further asserts that she has taken all steps necessary to prosecute this action and that class counsel is qualified and competent.

Defendant offers three arguments in response, none of which have merit.  First, Defendant argues that Plaintiff is not an adequate class representative because her claims are uniquely weak.  Defendant argues that Plaintiff's knowing misrepresentations in her Policy application made her claim susceptible to rescission.  The Court, however, rejected that argument in denying Defendant's motion for summary judgment.

Defendant next argues that Plaintiff's "lack of credibility hampers absent class members' chances of recovery," (ECF No. 56, at PAGEID # 1527), because Plaintiff admits that she signed the Policy knowing that Mr. O'Donnell had been seen or treated for certain medical conditions within the previous two years.  But the question presented by Damages Class One's claim is whether Defendant was permitted to deny claims after receiving the insured's death certificate

based on the insured's misrepresentation(s) in the policy application.  In other words, the class is limited to claimants who misrepresented facts in their applications.  The fact that Plaintiff signed the Policy with a false representation makes her claim typical to those of the class; it does not make her an inadequate class representative.

Defendant's related argument that Plaintiff lacks credibility because of certain statements she made in her deposition likewise fails.  That Plaintiff testified to purchasing several credit life insurance policies without reading them, that she did not anticipate her husband's death despite his medical history, that her husband reminded her to file a claim under the Policy upon his death, and that "she and Decedent reviewed Financial American's contact information on the policy," (ECF No. 56, at PAGEID # 1528), does not make her an inadequate class representative. It is questionable whether these facts even raise credibility issues, let alone issues that preclude Plaintiff from serving as a class representative.

Defendant's final argument is that Plaintiff's "blind reliance on class counsel and poor understanding of her claims makes her an inadequate class representative."  (ECF No. 56, at PAGEID # 1529.)  Defendant cites select pieces of Plaintiff's deposition purporting to show that Plaintiff does not understand the legal bases for her claim.  The Court finds these snippets of testimony insufficient to disqualify Plaintiff as a class representative.

For these reasons, the Court finds that Plaintiff meets her burden in demonstrating that Damages Class One satisfies Rule 23(a)'s prerequisite factors.  The Court proceeds to analyze whether Damages Class One also satisfies the mandatory factors set forth in Rule 23(b).

2.     *Rule 23(b)*

In addition to the Rule 23(a) factors, every class action must satisfy one of the following:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Plaintiff argues that Damages Class One satisfies Rule 23(b)(3).

### a. Predominance

Rule 23(b)(3)'s "predominance requirement is met if the common question identified 'is at the heart of the litigation.' " *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 329 (S.D. Ohio

2009) (citing *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)).  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  *Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 353 (6th Cir. 2011).

Plaintiff argues that "a predominant common question exists regarding whether Defendant may refuse to pay death benefits even though the claimant has satisfied all contractual prerequisites for having her claim paid."  (ECF No. 50, at PAGEID # 975.)  Plaintiff asserts that this question is at the heart of the litigation because the issue of whether Defendant is entitled to deny benefits pursuant to the 3DL status action code after a claimant submits the insured's death certificate is dispositive of the issue of whether Defendant breached each class member's policy.

Defendant's arguments in response are largely moot given the Court's findings in its March 21, 2016 Opinion and Order.  Defendant argues, for example, that individualized questions exist regarding whether each element of Ohio Revised Code § 3911.06 (such as materiality and knowledge) applies to the facts of each proposed class member's case.  But the Court has already held that § 3711.06 does not apply to Plaintiff's claim because the Policy does not include any interrogatories.  Because the policies at issue in Damages Class One likewise do not include interrogatories, Defendants' arguments about the remaining elements of the statute do not apply.

Defendant next argues that "individualized proof as to whether each purported class member complied with each claims requirement would be necessary."  (ECF No. 56, at PAGEID # 1540.)  But the evidence does not support that assertion.  Plaintiff presented undisputed

evidence that Defendant's claims examiners use the 3DL status action code to deny claims because of misrepresentations discovered after the claimant submitted the insured's death certificate.  The policies for each class member in proposed Damages Class One state that Defendant "will pay the amount of insurance then in force after we receive proof of death." (ECF No. 37-1, at PAGEID # 387.)  As such, Damages Class One is limited to claimants who satisfied the relevant procedural requirement for payment.  Defendant argues that "[t]hese class definitions do not differentiate between persons who satisfied each procedural requirement for submitting a claim, satisfied some of those requirements but not others, or failed to satisfy any such requirements," (ECF No. 56, at PAGEID # 1540), but does not identify any other procedural requirements.  This argument therefore fails.

Defendant's remaining arguments likewise fail.  Defendant argues that Plaintiff's signature on the claim release form renders her claims subject to a unique defense, and that Damages Class One fails to distinguish between class members who applied for joint coverage with a spouse and those who applied for single coverage.  Defendant does not, however, link these issues to the common (and predominant) issue that the class members' claims present.

### b.  Superiority

"To determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) (citing *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007)).  The Court should also compare other means of disposing of the suit to determine if a class action "is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate

22

a class action and to assume the risk of prejudice to the rights of those who are not directly

before the court." *Id*. (quoting 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,

Federal Practice and Procedure § 1779 (3d ed. 2010)). "Additionally, the court should consider

the value of individual damage awards, as small awards weigh in favor of class suits." *Id*. (citing

*Beattie*, 511 F.3d at 567).

Here, Plaintiff argues that her potential recovery of $21,000 "would be largely dissipated

by the costs of hiring counsel and prosecuting an action against an insurance company." (ECF

No. 50, at PAGEID # 978.)  Plaintiff further notes that there are no parallel actions pending in

other courts, thereby suggesting that similarly-situated claimants would not pursue their legal

rights absent certification.  Finally, Plaintiff argues that adjudication as a class action will not be

difficult because, although the individual damages amounts will vary, Defendant maintains a

record of the loan amount outstanding on each claim it denied pursuant to the 3DL status action

code.

Defendant responds that the potential recovery of $21,000 weighs against certification

because it is more than the individual amount sought in other class actions.  Defendant further

argues that a class action would require all purported members to disclose sensitive health

information about deceased insureds, which "is inferior to allowing each class member to

determine whether and how to pursue such sensitive claims regarding their deceased loved

ones." (ECF No. 56, at PAGEID # 1552.)  Defendant's remaining arguments on this issue do not

apply to Damages Class One.

Defendant's arguments are without merit.  Because class members have the option to opt

out, they are not "required" to disclose sensitive health information unless they chose to remain

in the class.  And the fact that the recovery at issue is more than the recovery at issue in other class actions is insufficient, in itself, to defeat class certification.

The Court concludes that Plaintiff satisfies her burden in demonstrating that Damages Class One meets Rule 23's requirements.  The Court accordingly **CERTIFIES** the following class:

> All persons who, during the maximum period of time permitted by law, filed a claim for payment of benefits pursuant to a credit life insurance policy issued by Defendant in Ohio, submitted proof of the insured's death, and had the claim denied pursuant to the 3DL Status Action Code.

The Court certifies this class with respect to Plaintiff's breach of contract claim and breach of the duty of good faith and fair dealing claim.

The Court has examined class counsel's qualifications under Rule 23(g).  The Court agrees with Plaintiff that class counsel has done sufficient work identifying and prosecuting Damages Class One's claims in this matter, that class counsel has sufficient experience handling class actions, that class counsel has knowledge of the applicable law, and that class counsel will commit sufficient resources to representing the class.  As such, the Court **GRANTS** Plaintiff's motion to appoint as class counsel Jeffrey S. Goldenberg and Todd B. Naylor of Goldenberg Schneider, LPA, and John M. Snider of Stebelton, Aranda & Snider, LPA.

### C.    Damages Class Two

Plaintiff asserts a claim for breach of contract on behalf of Damages Class Two under a related but slightly different theory of liability.  That is: whereas Damages Class One's theory of liability is that Defendant wrongfully denied each claimant's claim after receiving proof of the insured's death, Damages Class Two's theory of liability is that Defendant wrongfully requested the insured's medical records after receiving proof of the insured's death.

24

Defendant proffered the same defense to both of Plaintiff's breach of contract theories. In its motion for summary judgment, Defendant argued that both of Plaintiff's theories must fail because Ohio Revised Code § 3911.06 provides a defense to any breach of contract action in which an insured misrepresented material health information. Defendant alternatively argued that Ohio's common law allowed it to rescind Mr. O'Donnell's policy based on the fraudulent misrepresentation. Implicit in those arguments was Defendant's argument that, because Ohio law permitted it to rescind a policy based on a fraudulent misrepresentation, it was entitled to request and review Mr. O'Donnell's medical records despite the fact that the Policy did not explicitly authorize it to do so.

The Court rejected those arguments in its March 21, 2016 Opinion and Order. The result of that analysis is that Plaintiff's breach of contract theories overlap substantially: if Defendant breached the Policy by failing to pay benefits after receiving Mr. O'Donnell's death certificate, then it necessarily breached the Policy by requesting Mr. O'Donnell's medical records after receiving the death certificate.

That Defendant offered an Ohio-specific defense to both of Plaintiff's breach of contract theories compels the conclusion that Plaintiff cannot represent a class of Michigan claimants pursuing a breach of contract claim under the second theory of liability. The defenses available to this claim are state specific. Stated differently, Defendant's defense that it was entitled to request medical records and rescind the Policy due to Mr. O'Donnell's misrepresentation rested entirely on its interpretation of Ohio Revised Code § 3911.06 and Ohio's common law. The same defense obviously does not apply to a Michigan claimant's claim. *Compare* Mich. Comp. Laws § 500.2218 ("The falsity of any *statement* in the application for any . . . insurance policy . .

25

. may not bar the right to recovery thereunder unless such false *statement* materially affected either the acceptance of the risk or the hazard assumed by the insurer.") (emphasis added) *with* Ohio Rev. Code § 3911.06 ("No *answer to any interrogatory* made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon . . . unless it is clearly proved that . . . .") (emphasis added); *see also United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 788 (6th Cir. 1997) (stating that Mich. Comp. Laws § 500.2218 applies to life insurance policies).  Michigan's insurance laws—and not Ohio's—will dictate whether Defendant can argue that it is entitled to investigate a Michigan insured's medical history after receiving proof of the insured's death.  That the policies at issue do not explicitly reserve that right is only a portion of the equation.

In short, the defenses applicable to Plaintiff's claim and to the Michigan claimants' claims in Damages Class Two's claims will differ and will be central to each class member's claim.  Plaintiff therefore cannot satisfy Rule 23's commonality, typicality, or adequacy of representation requirements with respect to the Michigan claimants.  The Court **DENIES** Plaintiff's motion for certification of Damages Class Two to the extent it includes Michigan claimants.

With respect to the Ohio claimants, Damages Class Two is defined identically to Damages Class One.  The Rule 23 analyses are the same.  As such, the Court **CERTIFIES** Damages Class One with respect to the alternative theory of liability that Defendant breached the policy by requesting medical records after the claimant submitted proof of the insured's death.

### D.    Injunctive Class

In the Injunctive Class, Plaintiff seeks to represent a class of Ohio and Michigan policyholders "who are currently insured under credit life insurance policies with Defendant." (ECF No. 50, at PAGEID # 963.)  Plaintiff does not state the number of individuals she believes are in this proposed class, but notes that "36,605 Ohioans purchased Defendant's credit life insurance product in the past eight years."  (*Id*. at PAGEID # 947.)  Plaintiff asserts claims for declaratory judgment and injunctive relief on behalf of this class in order "to stop Defendant from requiring claimants in Ohio and Michigan to provide this broad release as a condition of having their claim evaluated."  (*Id*. at PAGEID # 958.)  It is important to note that, while Plaintiff seeks to represent the damages classes in her capacity as a claimant, she seeks to represent the Injunctive Class in her capacity as a current policyholder whose estate would be responsible for filing a claim upon her death.

Plaintiff's attempt to represent current Michigan policyholders in the Injunctive Class presents the same state-specific issues as those explained above.  That is: the defenses applicable to the Michigan policyholders' claims will be rooted in Michigan law.  That the Michigan policies do not explicitly permit an insurer to request an insured's medical records may or may not be dispositive, depending on the applicable Michigan statute(s) and Michigan common law regarding the extent to which an insurer can contest an insured's eligibility for coverage.

For that reason, Plaintiff is not an adequate class representative of the current Michigan policyholders.  The Court acknowledges that there are common questions of law and fact between Plaintiff's claim and the Michigan policyholders' claims; however, it is the state-specific defenses regarding misrepresentations that are the focus of the claims in this litigation.

The Court therefore **DENIES** Plaintiff's request to certify the Injunctive Class to the extent that it includes Michigan policyholders.

The Court reaches the opposite conclusion regarding Plaintiff's request to represent the current Ohio policyholders. Plaintiff meets her burden in satisfying each of Rule 23's requirements with respect to this proposed class.

First, Rule 23(a)(1)'s numerosity requirement is satisfied. Plaintiff presented evidence that 36,605 Ohioans purchased Defendant's credit life insurance policies in the past eight years and that only 648 Ohioans made a claim for benefits in that time period, suggesting that many thousands of Ohioans are current policyholders.[1] Defendant does not dispute that Rule 23(a)(1) is satisfied with respect to this proposed class.

Plaintiff's claim for injunctive and declaratory relief as a current policyholder also satisfies Rule 23(a)'s commonality, typicality, and adequacy of representation requirements. *See, e.g., McDonald*, 306 F.R.D. at 557 (considering Rule 23(a)'s commonality and typicality requirements together and noting that the adequacy of representation requirement overlaps the typicality requirement). The issue of whether Defendant may request an insured's medical records and contest the insured's eligibility for coverage based on the content of those records is common and central to each policyholder's claim. Plaintiff's claim is typical of each class member's claim in this regard. Plaintiff also is an adequate representative of this class for the same reasons as those set forth in Section IV(B) above.

The next question is whether the Injunctive Class satisfies Rule 23(b). Plaintiff asserts that the Injunctive Class satisfies Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive

---

[1] Plaintiff does not limit this number to policyholders who are within the policy's two-year contestability period. Because Defendant does not raise this issue, the Court will not address it.

relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiff

asserts that, should she die before the end of her Policy term, "Defendant will mail a claim form

to her executor that requires a broad release of medical, employment, government, law

enforcement, social security, and consumer credit records before Defendant will evaluate the

claim for policy benefits."  (ECF No. 50, at PAGEID # 971.)  Plaintiff further asserts that

Defendant will act pursuant to this policy with respect to each individual class member such that

a declaratory judgment applicable to the class is appropriate.

In response, Defendant argues that this case is not well-suited to an injunctive class

action because "the appropriate final relief relates exclusively or predominately to money

damages."  (ECF No. 56, at PAGEID # 1536.)  Defendant asserts that "[t]he principal issue . . .

'is whether [Plaintiff's primary goal in bringing this action is to obtain injunctive relief," (*id*.

(quoting *Dukes*, 509 F.3d 1186)), and that Plaintiff's principal interest in this case is recovering

monetary benefits under the Policy.

Defendant's argument fails.  Plaintiff is not seeking monetary damages in her capacity as

a current policyholder.  Plaintiff instead seeks a declaratory judgment that will impact

Defendant's future conduct should she die within the duration of the Policy.  Because the relief

sought targets future conduct, Defendant's argument that granting Plaintiff's claim for

declaratory relief "would require Financial American to pay benefits under the Policy," (ECF

No. 56, at PAGEID # 1537), is not accurate with respect to the Injunctive Class.

For those reasons, the Court finds that Plaintiff meets her burden in demonstrating that

the Injunctive Class satisfies Rule 23.  The Court accordingly **CERTIFIES** the following

Injunctive Class with respect to Plaintiff's declaratory judgment and injunctive relief claims:

Those persons who currently are insured under credit life insurance policies issued by Defendant in Ohio.

The Court **GRANTS** Plaintiff's motion to appoint as class counsel Jeffrey S. Goldenberg and Todd B. Naylor of Goldenberg Schneider, LPA, and John M. Snider of Stebelton, Aranda & Snider, LPA for the same reasons as those set forth in connection with Damages Class One.

### E.    Damages Class Three

Plaintiff seeks to represent Damages Class Three on a third theory of liability for breach of contract.  Specifically, Plaintiff asserts that the "Misstated Terms" provision in the Policy modifies that Policy's two-year incontestability clause and imposes a ninety-day period in which Defendant was authorized to contest Mr. O'Donnell's eligibility for coverage.  Plaintiff seeks to represent 103 Ohio claimants who had their claims denied for misrepresentations after the ninety-day period set forth in the Misstated Terms clause elapsed.  These 103 Ohio claimants are a subset of the 110 Ohio claimants who are members of Damages Class One.  Plaintiff also seeks to represent 97 Missouri claimants who had claims denied based on misrepresentations after the time period set forth in the Misstated Terms clause for Missouri policies (30 days) elapsed.

Although the parties discussed this theory of liability in the summary judgment briefing, the Court did not reach this issue because other issues were dispositive of Defendant's motion. This case now sits in a unique procedural posture.  The Court has issued a summary judgment order in which it applied Ohio law and decided many of the legal issues at the heart of Plaintiff's claim that Defendant breached the Policy by requesting Mr. O'Donnell's medical records and rescinding Mr. O'Donnell's coverage after Plaintiff submitted proof of his death.  If that claim is successful, then Plaintiff's alternative theory that Defendant breached the Policy because it took such action more than ninety days after the O'Donnells applied for coverage will be moot.

30

The Missouri claimants who had claims denied more than thirty days after they applied for coverage from Defendant are not in the same situation.  There is no claim pending, and no decision issued, regarding the issue of whether an insurance company can rescind a Missouri policy based on a misrepresentation after the claimant has submitted proof of the insured's death. Missouri claimants are not, in other words, pursuing an alternative theory of liability that has been the subject of a summary judgment opinion from this Court.

That the parties briefed the class certification motion before the Court adjudicated Defendant's motion for summary judgment only compounds this issue.  Given the Court's findings in the March 21, 2016 Opinion and Order, it is unclear to what extent Plaintiff will continue to pursue this alternative theory of liability.  The Court therefore cannot make a determination at this time whether Plaintiff's claim is typical of the Missouri claimants' claims and/or whether Plaintiff will adequately represent that class of individuals.

Plaintiff indicated in a prior motion that she intends to move for summary judgment. Plaintiff stated that she was precluded from doing so until the Court adjudicated her motion for class certification.  The Court accordingly withholds judgment on the class certification issue with respect to Damages Class Three until it adjudicates the motion for summary judgment filed on behalf of Damages Class One and/or        any motion for summary judgment filed by Defendant regarding the theory of liability that Damages Class Three seeks to advance.  At that time, should Plaintiff continue to pursue certification on behalf of Damages Class Three, she shall be instructed to file a new motion for class certification with respect to Damages Class Three only.

**III.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Plaintiff's motion for class certification.  (ECF Nos. 48 & 50.)

    **IT IS SO ORDERED**.

                           **/s/ Gregory L. Frost**
                           **GREGORY L. FROST**
                           **UNITED STATES DISTRICT JUDGE**