

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 AUG 21  PM 3: 22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

SHEELA K. O'DONNELL,

    Plaintiff,

v.

                              Case No. 2:14-cv-1071
                              JUDGE MICHAEL H. WATSON
                              Magistrate Judge Jolson

FINANCIAL AMERICAN LIFE
INSURANCE CO.,

    Defendant.

## OPINION AND ORDER

Financial American Life Insurance Co. ("Defendant") moves for reconsideration of the Court's March 21, 2016, Opinion and Order ("March 21 Order"), ECF No. 99, and to certify three issues decided in the Order to the Ohio Supreme Court, ECF No. 86. The Court **DENIES** both motions.

## I.    BACKGROUND

The facts of this case are set forth in more detail in the March 21 Order. For ease of reference, relevant background facts from that Order are repeated below.

### A. The Parties

Defendant Financial American Life Insurance Co. offers credit life insurance policies. Such policies, available to consumers financing credit

transactions, offer payments to the consumer's lender in the event the consumer dies or becomes disabled. Defendant offers its policies exclusively at automobile dealerships, where Defendant trains the dealership's employees on how to offer the policies to customers. Tri-County Chrysler Dodge Jeep in Health, Ohio ("Tri-County") was one of these dealerships.

On February 10, 2102, Plaintiff Sheela K. O'Donnell and her late husband, Daniel O'Donnell, Sr., purchased a new automobile from Tri-County. The O'Donnells financed the automobile purchase through Wells Fargo Dealer Service ("Wells Fargo").

In connection with the purchase, a Tri-County agent solicited the O'Donnells to purchase one of Defendant's policies. The agent told the O'Donnells that it would benefit them to purchase credit life insurance since they were both in their sixties. The agent then presented the O'Donnells with an application for credit life insurance (the "Policy"). The agent did not inform the O'Donnells of any restrictions on their ability to purchase the insurance or otherwise discuss the O'Donnells' suitability for the insurance. The agent similarly did not ask any questions about the O'Donnells' heath history.

### B. The Policy and its Terms

The parties highlight several of the Policy's provisions. The following provisions relate to the O'Donnells' eligibility for the Policy:

THE FOLLOWING ARE MY REPRESENTATIONS AND
ACKNOWLEDGMENT OF INSURABILITY REQUIREMENTS

ELIGIBILITY REQUIREMENT:

. . .

1. I am not eligible for any insurance if I now have, or during the past two (2) years have been seen, diagnosed or treated (including medication) by a doctor or member of the medical profession for: (a) a disease or disorder of the: Brain, Heart, Lung, Liver, Kidney, Respiratory System, Circulatory System, Digestive System, Neurological/Muscular System; (b) Cancer; High Blood Pressure (prescribed and/or taking more than one medication); Edema; Stroke; Diabetes; Alcoholism; Drug Abuse; Morbid Obesity (and/or complications directly related to); or a Psychological or Psychiatric Illness; (c) an HIV Positive test result; or (d) weight reduction surgery (had or recommended to have).

. . .

YOUR CERTIFICATE MAY NOT BE IN FORCE WHEN YOU HAVE A CLAIM! PLEASE READ!

Your certificate is issued based on the information entered in this Application. If, to the best of your knowledge and belief, there is any misstatement in this Application or if any information concerning the medical history of any insured person has been omitted, you should advise the Company, otherwise your Certificate may not be a valid contract.

My signature below acknowledges that I have read and understand the above Insurability Requirements and represent that I meet both the Eligibility Requirements and the Statement of Insurability and am eligible for the coverage as requested in the Schedule. I further understand and agree that I am insured only if I have signed below and I agree to pay the premiums for this insurance. . . .

ECF No. 37-1, at PAGEID # 386.

Below that clause, the O'Donnells both signed the Policy:

WARNING: Any person who, with intent to defraud or knowing that he·is facilitating a fraud against an insurer, submits an Application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

Primary Borrower: _Sheelen K.H.nne 0/12_   Co-Borrower's _Daniel P. O'Donnell_

Date                                                        Date

*Id.*

Plaintiff testified that neither she nor Mr. O'Donnell read the Policy before signing it. The Tri-County agent did not instruct the O'Donnells not to read the Application or obstruct the O'Donnells from doing so. Plaintiff testified that she and Mr. O'Donnell had signed other applications for credit life insurance in the past without reading them.

Following the Policy's Eligibility section is a section entitled CERTIFICATE OF INSURANCE. This section states:

> We certify that, if we have been paid the premium shown in the Application, you are insured for the coverage shown in the Application, subject to the terms of the Group Policy issued to the Creditor and acceptance by us. Our acceptance will be in accordance with our procedures and practices. Under no circumstances will acceptance occur before sixty (60) days of the receipt of the Application. . . . All benefit payments are made to the Creditor shown in the Application to pay off or reduce your debt. If benefit payments are more than the balance of your loan, we will pay the difference to you or to a named Second Beneficiary. . . .

The PAYMENT OF A DEATH BENEFIT section below the CERTIFICATE OF INSURANCE SECTION states:

> If you or the insured Co-Borrower dies while insured, we will pay the amount of insurance then in force after we receive proof of death. Only one death benefit is payable under this Certificate. Payment of a death benefit terminates all insurance coverage under this Certificate. We will not pay more than the decreasing insurance balance of the initial amount of life insurance.

*Id.* at PAGEID # 387.

It is undisputed that the O'Donnells paid a premium of $1,429.56 at the time they signed the Policy. This premium, according to Plaintiff, purchased $30,629.93 worth of credit life insurance over a period of 75 months, payable to Wells Fargo in the event the O'Donnells died or became disabled. Defendant accepted the premium payment, meaning that the O'Donnells became "insured for the coverage shown in the Application, subject to the terms of the Group Policy issued to the Creditor." *Id.* Defendant therefore became obligated to "pay the amount of insurance then in force after we receive proof of death" in the event that either of the O'Donnells died while insured. *Id.*

### C. Mr. O'Donnell's Death

Approximately a year and a half after the O'Donnells purchased the Policy, on October 16, 2013, Mr. O'Donnell died. Plaintiff submitted a claim to Defendant for a life benefit payment pursuant to the Policy. The balance owed on the loan at that time was approximately $21,000.

Plaintiff included a certified copy of Mr. O'Donnell's death certificate with her claim. The death certificate lists Mr. O'Donnell's cause of death as myocardial infarction due to coronary artery disease and hypercholesterolemia. The death certificate also lists conditions contributing to Mr. O'Donnell's death as hypertension, atrial fibrillation, congestive heart failure, peripheral vascular disease, and esophageal cancer.

Defendant requested additional information from Plaintiff. Specifically, Defendant presented Plaintiff with authorization forms to obtain Mr. O'Donnell's medical records. Plaintiff complied and Defendant received the forms, which indicated that Mr. O'Donnell had suffered from and been treated for high blood pressure, vascular disease, and other disorders within the two years preceding the date on which the O'Donnells signed the Policy.

It is undisputed that the O'Donnells' representation that Mr. O'Donnell met the insurance eligibility requirements set forth in the Policy was false. It is undisputed that both Plaintiff and Mr. O'Donnell were aware that Mr. O'Donnell had been seen, diagnosed, and treated for heart, kidney, circulatory, neurological conditions or high blood pressure in the two years preceding the date on which they signed the Policy. It likewise is undisputed that the O'Donnells did not inform Defendant about Mr. O'Donnells ineligibility under the Policy at any point prior to Mr. O'Donnell's death.

Upon receiving Defendant's medical forms and determining that Mr. O'Donnell had been ineligible for coverage, Defendant denied Plaintiff's claim. Plaintiff filed this lawsuit shortly thereafter.

### D. Procedural Posture

Plaintiff brings the following claims that are relevant to this Opinion and Order: (1) declaratory relief that Defendant is not permitted to demand medical records as a condition for evaluating a claim for life insurance death benefits

unless the policy specifically reserves that right (Count One); (2) breach of contract for refusing to evaluate Plaintiff's claim unless she produced medical records after the insured's death (Count Three); (3) breach of the duty of good faith and fair dealing (Count Four); and (4) unjust enrichment/equitable restitution (Count Five). Defendant counterclaims for rescission of the Policy and for a declaratory judgment that: (1) Plaintiff's request for coverage and benefits under the Policy is precluded because the Contract of Insurance with regard to coverage for Decedent is void *ab initio* as a result of the O'Donnells' fraudulent misrepresentations on the Application; (2) Plaintiff's request for coverage and benefits under the Policy is precluded under Ohio Revised Code § 3911.06; and (3) Plaintiff's request for coverage and benefits under the Policy is precluded because Mr. O'Donnell was not eligible for coverage such that no contract was formed.

Defendant moved for summary judgment on each of Plaintiff's claims and on its counterclaims. Defendant argued, *inter alia*, that the O'Donnells' signatures on the Policy were false representations that voided their coverage thereunder. Defendant relied primarily on Ohio Revised Code § 3911.06, title "False Answer," which states:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer

the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

The Ohio Supreme Court has stated the following regarding § 3911.06:

> [A]n insurer can satisfy the requirements of Section 3911.06, so as to establish an answer to an interrogatory by an applicant as a bar to recovery upon a policy, by clearly proving that
>
> > (1) the applicant willfully gave a false answer
> > (2) such answer was made fraudulently
> > (3) but for such answer the policy would not have been issued and
> > (4) neither the insurer nor its agent had any knowledge of the falsity of such answer.

*Jenkins v. Metro. Life Ins. Co.*, 171 Ohio St. 557, 561–62, 173 N.E.2d 122

(1961).

This Court, in an Opinion and Order by now-retired Judge Frost, rejected

Defendant's arguments regarding § 3911.06's application to this case. Judge

Frost analyzed the issue as follows:

> The first question for the Court is one of statutory interpretation: does the O'Donnells' signature on the Policy constitute a false "answer to any interrogatory" within the meaning of § 3911.06? Plaintiff argues that the plain language of the statute does not apply because the O'Donnells were not presented with and did not answer any interrogatories in connection with the Policy. Defendant argues that, notwithstanding the statute's plain language, "Ohio courts apply R.C. 3911.06 to applications with affirmations similar to the one at issue here." (ECF No. 37, at PAGEID # 356.) Defendant cites caselaw in which a judicial officer from the Northern District of Ohio found that "the Ohio statute intends to protect the insurer from a fraudulent application." (*Id.* at PAGEID # 359 (citing *New York Life Ins. Co. v. Wittman*, 813 F. Supp. 1287, 1298 (N.D. Ohio 1993)). Defendant also cites a case in which an Ohio court found that an affirmation in a life insurance policy "was in effect an interrogatory." (*Id.* at PAGEID # 1461 (quoting *Am. Assur. Co. v.*

*Early*, 34 Ohio C.D. 320, 1912 WL 827 (Ohio Cir. Ct. 1912)).) Finally, Defendant argues that "[t]here is no rational reason to limit application of the statute to circumstances where such health information is provided only by response to a question." (*Id.*)

In interpreting § 3911.06, the Court is "obligated to decide the case as [it] believe[s] the Ohio Supreme Court would do." *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 648 (6th Cir. 2012) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 384 (6th Cir. 2009) (brackets omitted)). The Court must look "first to final decisions of the highest court of that state, in this case Ohio, and if there is no decision directly on point, the court must make an *Erie* judgment as to how Ohio's courts would decide the issue." *Kings Dodge, Inc. v. Chrysler Grp., LLC*, 595 F. App'x 530, 534 (6th Cir. 2014).

"[T]he primary goal of statutory interpretation is to determine and give effect to the legislature's intent when it enacted the statute." *Id.* (citing *Sugarcreek Twp. v. City of Centerville*, 133 Ohio St.3d 467, 979 N.E.2d 261 (2012)). "When construing a statute, Ohio courts first examine its plain language and apply the statute as written when the meaning is clear and unambiguous." *City of Columbus, Ohio*, 693 F.3d at 648 (quoting *AT&T Commc'ns of Ohio, Inc. v. Lynch*, 132 Ohio St. 3d 92, 96, 969 N.E.2d 1166 (Ohio 2012) (brackets omitted)). "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Kings Dodge, Inc.*, 595 F. App'x at 534 (quoting *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St. 3d 138, 931 N.E.2d 548 (2010)). Only if the statute's meaning is ambiguous may the Court consider other factors such as the purposes underlying the statute. *See id.* (citing Ohio Rev. Code Ann. § 1.49).

Turning to the statute at issue, § 3911.06 unambiguously limits its reach to "answer[s] to any interrogatory." This language contains two distinct elements: "a formal question or inquiry," and an affirmative answer to the same. *Interrogatory*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/interrogatory (last accessed March 16, 2016); *see also Kings Dodge, Inc.*, 595 F. App'x at 535 (noting that, "[i]n determining the 'common, everyday meaning of a word, [Ohio courts] have consistently used dictionary definitions' " (quoting *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d

463, 786 N.E.2d 889 (2003))). In *Jenkins*, for example, the Ohio Supreme Court considered an insurance application that contained the question: "Have to you ever consulted any physician, healer, or other practitioner within the last 5 years for any reason not mentioned above?" to which the applicant answered, "No." 171 Ohio St. at 559. Most of the cases on which Defendant relies discuss insurance applications with similar questions and answers. *See, e.g., Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 909 (S.D. Ohio 2008) (analyzing an applicant's answer of "no" to the question: [w]ithin the last five (5) years, have you . . . ever received any medical or surgical consultation, advice, or treatment including medication for [certain medical conditions]?").

Here, Defendant does not identify an interrogatory presented to the O'Donnells in connection with the Policy. Defendant likewise does not identify an affirmative answer to a formal inquiry that the O'Donnells gave. The plain language of § 3911.06 therefore does not apply to the facts of this case. Defendant's arguments to the contrary are without merit. First, the Court disagrees with Defendant's statement that there is no rational reason to limit application of the statute to circumstances in which information is provided in response to a question. Limiting the statute in this way ensures that it reaches only affirmative conduct in which an applicant provides false information in response to a question that he or she necessarily read. Because the statute expressly limits its reach to willful conduct, it is not "irrational" to conclude that the statute's plain language was intended to reach only affirmative misstatements. Indeed, one might rationally conclude that the General Assembly chose to limit § 3911.06 in order to avoid situations like the present one, in which the applicant claims that he or she did not read the policy before signing it.

Second, although Defendant cites caselaw in which two Ohio appellate courts and one federal district court purported to apply § 3911.06 or a related statute to facts similar to the facts at issue here, none of those cases discuss the statutory interpretation issue or otherwise explain why § 3911.06 should be interpreted inconsistently with its plain language. These cases therefore provide no persuasive value on the issue of whether the Ohio Supreme Court would apply the statute to the facts of this case. The quote from a judicial officer in the Northern District of Ohio that a related statute "intends to protect the insurer from a fraudulent application,"

*New York Life Ins. Co.*, 813 F. Supp. at 1301, likewise does not address § 3911.06's reference to "answer[s]" to "interrogator[ies]." The *New York Life Insurance* court's quote is especially unpersuasive in this context because statutory purpose only becomes relevant if the statute's language is ambiguous, which is not the case here. *See Kings Dodge, Inc.*, 595 F. App'x at 534.

Defendant's final argument, as stated above, is that an Ohio circuit court previously found that an affirmation in a life insurance policy "was in effect an interrogatory." (ECF No. 37, at PAGEID # 1461 (quoting *Am. Assur. Co. v. Early*, 34 Ohio C.D. 320, 1912 WL 827 (Ohio Cir. Ct. 1912)).) But the *American Assurance Co.* court's entire analysis of this issue is as follows: "[T]he application was on a blank furnished by the company; it was in effect an interrogatory." *Am. Assur. Co.*, 34 Ohio C.D. at 324. The Court finds that this limited analysis does not support Defendant's statement that "it has long been the law in Ohio" that courts interpret the word "interrogatory" inconsistently with its plain language. (ECF No. 55, at PAGEID # 1461.)

The Court concludes that § 3911.06 does not apply to the facts of this case. The Court need not address the parties' arguments regarding whether § 3911.06 applies to group life insurance and/or whether § 3911.06 allows for rescission after loss.

Op. & Order 11–15, ECF No. 64.

Judge Frost noted that the analysis did not end with § 3911.06. Because

Ohio's common law provides a separate ground for rescission of contracts based

on fraudulent misrepresentations, Judge Frost proceeded as follows:

Having rejected Defendant's arguments regarding § 3911.06, the Court is left with Defendant's counterclaim for rescission under Ohio common law. Defendant argues that a party seeking to rescind a contract on the ground that it was procured by fraudulent misrepresentations must prove five elements:

(1) that there were actual or implied misrepresentations of material matters of fact; (2) that such representations were false; (3) that such representations were made by

one party to the other with knowledge of their falsity; (4) that they were made with the intent to mislead a party to rely thereon and (5) that such party relied on such representations with a right to rely thereon.

(*Id.* (quoting *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 758 F.Supp.2d 476, 487 (S.D. Ohio 2010)).

The standard set forth in *Fifth Third Mortgage Co.* does not support Defendant's position that it is entitled to rescind the Policy in this case. A brief summary of Ohio insurance law provides the necessary context for this statement.

Courts applying Ohio law to insurance contracts (outside the confines of § 3911.06) must distinguish between representations and warranties. *See Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 821 (6th Cir. 2015) (citing *James v. Safeco Ins. Co. of Ill.*, 195 Ohio App. 3d 265, 959 N.E.2d 599 (2011)); *see also Allstate Ins. Co. v. Boggs*, 27 Ohio St. 2d 216, 218–19, 271 N.E.2d 855 (1971). "[A] representation is a statement made prior to the issuance of the policy which tends to cause the insurer to assume the risk." *Boggs*, 27 Ohio St. 2d at 219. "A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." *Id.* (citing *Harford Protection Ins. Co. v. Harmer* (1853), 2 Ohio St. 452). "The insurer's decision to incorporate the statement in or to omit it from the policy generally controls whether the statement is a warranty or a representation." *Id.*

The distinction between a warranty and a representation in an insurance contract is important: whereas a misstatement of fact in a warranty voids a policy ab initio, a misrepresentation by the insured renders the policy voidable at the insurer's option. *See id.* at 218–19. Notably for purposes of this case, if an insurance contract is voidable (as opposed to void ab initio), an insurer cannot void the contract after liability has accrued. *See id.*; *see also Ramsey*, 787 F.3d at 821. As such, the Ohio Supreme Court has held that an insurance policy must clearly and unambiguously state that a misstatement by the insured will render the policy void ab initio in order for the statement to be considered a warranty. *Id.*

The court in *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.* reiterated this standard. *See* 758 F. Supp. 2d at 488 (quoting *Boggs*, 271 N.E.2d at 857). The *Fifth Third* court explicitly noted that the five-pronged standard it cited (which Defendant cites in support of its position in this case) did not apply because the insurer was attempting to void a policy based on a misrepresentation after it had incurred liability under that policy. *See id.* In effect, the *Fifth Third* court acknowledged that a party can rescind a contract based on fraudulent misrepresentations if it can prove the five elements Defendant cites, but only if the rescission occurs before liability accrues under the policy.

Defendant's claim for common law rescission therefore turns on whether the O'Donnells' false statements in the Policy are warranties or representations. Defendant does not argue that the statements are warranties. In response to Plaintiff's arguments that the statements at issue are representations, Defendant argues only that the distinction is irrelevant under § 3911.06.

The Court therefore will assume that the statements at issue are representations for purposes of this Opinion and Order. Liability under the Policy accrued once Plaintiff submitted proof of Mr. O'Donnell's death to Defendant. *See* ECF No. 37-1, at PAGEID # 387 ("If you or the insured Co-Borrower dies while insured, we will pay the amount of insurance then in force after we receive proof of death.") Because Defendant did not attempt to rescind the Policy before that time, the five-pronged test set forth in *Fifth Third Mortgage Co.* does not apply. The Court accordingly **DENIES** Defendant's motion for summary judgment on its counterclaim.

Op. & Order 15–17, ECF No. 64. Judge Frost applied the same reasoning to deny Defendant's motion for summary judgment on all claims.

Dissatisfied with Judge Frost's March 21 Order, Defendant moved on November 8, 2016, to certify the same issues it had argued in its motion for summary judgment to the Ohio Supreme Court. Subsequently, on January 23, 2017, Defendant moved for reconsideration of the March 21 Order.

This case has since been transferred to the Undersigned. Because the Court finds no error with Judge Frost's analysis and no need to certify the issues to the Ohio Supreme Court, it denies Defendant's motions.

## II.    MOTION FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not explicitly authorize motions for reconsideration. A court will grant such a motion only if the moving party can show: (1) an intervening change of controlling law, (2) new evidence available, or (3) a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

Defendant proceeds under the third prong of this test. Defendant purports to make its motion "in light of additional authority showing that, as a matter of Ohio law, affirmations like those appearing in the O'Donnells' insurance application are interrogatories within the meaning of § 3911.06," ECF No. 99-1, at PAGEID # 2156. None of the authority Defendant cites, however, came after Defendant filed its motion for summary judgment. It is unclear to the Court why Defendant did not present this available authority in its summary judgment motion and why it chose to rely, instead, on four cases with minimal (if any) discussion about § 3911.06's use of the term "interrogatory."

Ultimately, this fact is without consequence because none of the authority Defendant cites alters the Court's analysis. The basic premises of Judge's

Frost's holding are that: (1) the Ohio Supreme Court dictates that unambiguous statutes must be interpreted consistently with their plain language; (2) the plain language of the term "interrogatory" in unambiguous; (3) the Policy does not contain an "interrogatory" such that § 3911.06 does not apply; and (4) accordingly, pursuant to Ohio Supreme Court precedent, additional considerations such as legislative purpose do not impact the analysis.

Defendant does not challenge any of these premises. Its entire argument in moving for reconsideration is the same argument it made in moving for summary judgment; namely, that lower courts have interpreted § 3911.06 inconsistently with its plain language and, as such, this Court should do the same. But it is axiomatic that this Court must interpret § 3911.06 as it believes the Ohio Supreme Court would do. *See, e.g., In re Porsche Cars N. Am.*, 880 F. Supp. 2d 801, 815 (S.D. Ohio 2012). Lower court opinions are persuasive but are not necessarily controlling. *See id.*

The Ohio Supreme Court has unequivocally stated that unambiguous Ohio statutes must be interpreted consistently with their plain language. *See, e.g., Kings Dodge, Inc. v. Chrysler Grp., LLC*, 595 F. App'x 530, 534 (6th Cir. 2014) (citing *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St. 3d 138, 931 N.E.2d 548, 552 (2010); Ohio Rev. Code Ann. § 1.49)). Judge Frost correctly applied that rule of statutory interpretation.

Defendant disingenuously suggests that the term "interrogatory" is ambiguous and that Judge Frost erred in relying on the dictionary definition of the term. It offers no authority suggesting a different definition or interpretation of the term. To the contrary, Defendant goes on to quote an Ohio Circuit Court case from 1910 in which the court acknowledged that applying the term "interrogatory" to an affirmation "perhaps extend[s] the statute somewhat beyond its letter." Mot. 12, ECF No. 99-1 (quoting *Pacific Mutual v. Barnes*, 25 Ohio C.D. 380, 382-83, 1910 WL 1220 (Ohio Cir. Ct. 1910)). In other words, the cases on which Defendant relies in its motion implicitly acknowledge that the term "interrogatory" is not ambiguous and that § 3911.06 only applies to an affirmation if it is interpreted inconsistently with its plain language, "considering its manifest purpose and spirit." *Id*. Defendant's analysis clearly contradicts the Ohio Supreme Court's rules of statutory interpretation that unambiguous statutes are to be interpreted consistently with their plain language and that legislative purpose only becomes relevant if the statute is ambiguous.

Defendant goes on to argue that interpreting § 3911.06 consistently with its plain language is manifestly unjust. It suggests, curiously, that the Court must reverse course on its statutory interpretation analysis in order to prevent Plaintiff from recovering damages for breach of the duty of good faith and fair dealing. Because the Undersigned does not read Judge Frost's March 21 Order as restricting Defendant's ability to argue that it acted reasonably and in good faith

in denying Plaintiff's claim, this argument is out of place in the motion for reconsideration.

Defendant offers a similar argument regarding Plaintiff's unjust enrichment claim; however, this argument entirely depends on Defendant's contention that § 3911.06 applies to this case. The Court rejects this argument for the same reasons as those set forth above.

Having found no clear error or manifest injustice with the March 21 Order, the Court **DENIES** Defendant's motion for reconsideration, ECF No. 99.

### III.   MOTION TO CERTIFY

Plaintiff moves to certify the following issues to the Ohio Supreme Court:

(1) Whether an affirmation of the applicant's health in a credit life insurance application in the State of Ohio is an "answer to an[] interrogatory" within the meaning of Ohio statute § 3911.06;

(2) Whether a credit life insurer, under Ohio common law or Ohio statute, may rescind a policy after the date on which a claim was submitted based on a knowing misrepresentation of fact contained in the insurance application; and

(3) Whether a credit life insurer is allowed to investigate a claim once the claim is made, but prior to payment of the claim, absent a specific provision in the policy expressly allowing the insurer to do so.

Mot. Certify 7, ECF No. 86-1. The Court applies the following standard:

Federal courts have the power to certify questions to the state supreme court. It is well within the discretion of this Court to decide whether to certify. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). Though federal courts may certify questions to the Ohio Supreme Court, it is not mandatory. *Drown v. Wells Fargo Bank, NA*, 2:10-CV-00272, 2010 WL 4939963, at *1

(S.D. Ohio Nov. 30, 2010) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)). Under the Ohio Supreme Court Rules of Practice, the Ohio Supreme Court may answer questions of law certified to it by federal courts:

> The Supreme Court may answer a question of law certified to it by a court of the United States. This rule is invoked if the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court. S. Ct. Prac. R. 9.1(A).

Simple "difficulty in ascertaining local law provides an insufficient basis for certification." *Duryee v. U.S. Dep't of the Treasury*, 6 F. Supp. 2d 700, 704 (S.D. Ohio 1995) (citing *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 958 F.2d 622 (5th Cir. 1992)). If the Court "believes it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so," certification is unwarranted. *Drown*, 2010 WL 4939963 at *2 (citing *Lehman Bros.*, 416 U.S. 395) (Rehnquist, J., concurring). Even when the question of state law is generally unsettled, "federal courts generally 'will not trouble our sister state courts. . . . When we see a reasonably clear and principled course, we will seek to follow it ourselves.' " *Pennington*, 553 F.3d at 450 (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)).

To decide in favor of certification, this Court must weigh whether "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." S. Ct. Prac. R. 9.1(A). Subsequently, the Court must consider if it is capable of resolving the issue of state law with the materials at hand. Only if the Court finds that there is a genuine dearth of guidance from state court precedent, so much so that it would be extremely difficult to examine properly the questions presented, will the Court then decide to certify questions to the Ohio Supreme Court.

*Tri Cnty. Wholesale Distribs., Inc. v. Labatt Operating Co., LLC*, No. 2:13–cv–317, 2014 WL 32307, at *2 (S.D. Ohio Jan. 6, 2014). *See also Shaheen v.*

*Yonts*, 394 F. App'x 224, 233 (6th Cir. 2010) ("We are mindful that in the context of a request for certification, the state court need not have addressed the exact question at issue, so long as well-established principles exist to govern a decision.").

The timing of Defendant's request—after this Court rejected the identical arguments Defendant intends to present to the Ohio Supreme Court—weighs against certification. *See, e.g.*, *Gasho v. Glob Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 713 (S.D. Ohio 2013); *see also Shaheen*, 394 F. App'x at 232 (citing *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977)). Certification at this stage would not only allow Defendant a second bite at the apple, but it also would unnecessarily duplicate judicial effort. *See id.*

Even had it been timely, however, Defendant's request to certify is without merit. As stated above, Defendant does not challenge any of the four premises of Judge Frost's ruling on the statutory interpretation issue: (1) that well-settled Ohio Supreme Court precedent dictates that unambiguous statutes must be interpreted consistently with their plain language; (2) that the plain language of the term "interrogatory" in unambiguous; (3) that the Policy does not contain an "interrogatory" such that § 3911.06 does not apply; and (4) accordingly, pursuant to Ohio Supreme Court precedent, that additional considerations such as legislative purpose do not impact the analysis. As such, there is nothing left to certify regarding the first issue.

Defendant's request to certify the second and third issues loses significant context without the first issue. Had Defendant—like countless other insurance companies in cases the Court has reviewed—structured its Policy in the form of interrogatories to which an insured must affirmatively respond, § 3911.06 would have protected Defendant from false answers, and the second and third issues Defendant seeks to certify would not come into play. Defendant elected not to do so. Because this factual scenario has limited application outside of this case, and because Judge Frost identified and discussed relevant authority that allowed him to decide the issue, the Court exercises its discretion to deny certification on the second and third issues.

The Court rejects Defendant's public policy arguments for similar reasons. Although the Court acknowledges the harsh result in this case given the undisputedly false affirmation, Defendant could have—but elected not to—structured its Policy within § 3911.06's reach. Any issues Defendant has with Judge Frost's ruling are issues with the General Assembly and the language it chose in drafting § 3911.06. This Court disagrees with Defendant's characterization of the "far reaching impact of this holding," ECF No. 86-1, and is unpersuaded that certification is warranted on any issue.

The Court accordingly **DENIES** Defendant's motion for certification, ECF No. 86.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motions for certification, ECF No. 86, and for reconsideration, ECF No. 99. The Clerk is **DIRECTED** to remove these motions from the Court's pending motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON**
**UNITED STATES DISTRICT JUDGE**